Morrison v. Woodbury.

No. 22,199.

R. M. MORRISON, *Appellant*, v. B. H. WOODBURY, *Appellee.*

SYLLABUS BY THE COURT.

1. TRADE SECRETS—*Expiration Books of Insurance Company—Wrongful Use by Discharged Employee—Replevin—Injunction.* The law recognizes a property right in trade secrets and confidences, and a court of equity may, when its jurisdiction is properly invoked, enjoin one in whom the confidence has been reposed, from divulging it to third persons or from taking advantage of it himself to the injury of the owner. In the case of an employee, such an obligation exists in the absence of a stipulation to the contrary.

2. SAME. The right to such relief is not affected by the fact that the trade secrets or confidences are embraced in books or lists which may have been added to by the employee's efforts.

3. SAME—*Expiration Books of Insurance Company—Discharged Employee Enjoined from Taking Copies from Original Books for His Own Use.* In an action by the owner of an insurance agency against a former employee to recover possession of original books showing the expiration of policies written by the defendant for the plaintiff, and to enjoin the making or using of copies taken from the original books, where the admissions of the defendant showed that after the action in replevin was brought, and before the injunction was asked for, he procured copies of portions of the books for the purpose of retaining them in the event the court required him to turn over the originals, and expected to use the copies for the purpose of soliciting business for other insurance companies, *held*, that it was error to deny the injunction, and upon the undisputed facts, judgment is ordered for the plaintiff.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed December 6, 1919. Reversed.

*Edward T. Riling,* and *John J. Riling,* both of Lawrence, for the appellant.

*R. E. Melvin,* of Lawrence, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This is an appeal from a judgment dissolving a restraining order, and denying plaintiff relief by injunction.

The litigation commenced on March 25, 1918, when plaintiff brought an action in replevin against defendant to recover the possession of ten fire insurance expiration books. It was alleged in the petition in that case that plaintiff held the agency for various fire and tornado insurance companies in Douglas county, and that the defendant had been employed by him as a farm solicitor for insurance from 1902 until October, 1917, when he was discharged by the plaintiff; that when he started working for plaintiff he was given expiration books showing the dates of policies and their expirations, the rate of insurance for which they were written, and other information of great value to the plaintiff, and was instructed to fill out the books to show the same character of information respecting new business written by him; that the books became and were the property of plaintiff; but that after defendant was discharged he retained the books and was using them in soliciting insurance for another agency, and had refused the plaintiff's demand for their return. The defendant gave a redelivery bond and retained the books in his possession.

While the replevin suit was pending, and before trial was reached, the plaintiff brought this suit to enjoin defendant from using the expiration books or copies thereof, or selling, giving or loaning the books or copies to other parties, and asked that at the final hearing of the cause defendant be perpetually enjoined from using the same, and that the plaintiff recover damages against defendant in a sum to be determined by the court. A temporary restraining order issued, and the application for a temporary injunction was set for hearing on May 6, 1918, at which time the restraining order was set aside, and an order was made consolidating the case with the replevin action. Early in the progress of the trial, the court became satisfied from the testimony of the plaintiff and admissions made by the defendant, that the original books belonged to the

Morrison .v. Woodbury.

plaintiff, and also that shortly after defendant quit working for plaintiff he had entered the employ of another insurance agent for whom he had been and was then engaged in soliciting fire and tornado insurance, using the expiration books he had obtained while in the plaintiff's employ for the purpose of securing business for a competitor of the plaintiff. The court thereupon refused to submit the replevin matter to the jury because of the undisputed facts and admissions, and made an order that the defendant turn the books over to the clerk.

On the trial of the injunction feature of the case, the defendant was asked if he had copies of the books in question. His answer was:

"Well, I have a few here that I copied into another book, but it is not a direct copy."

He testified that the copies had been made by one of his daughters.

"Q. When was it made for you, Mr. Woodbury? A. Well, since this action was begun, or about that time, I guess.

"Q. Was it made since these books were replevined, or since this replevin action was started? A. Possibly, partly after that.

"Q. What did you make it for? A. Why, so if these books were taken away from me, I would have a kind of a lineup on what I had been doing for the past years.

"Q. You copied these out of those expiration books, did n't you? A. Not all of it.

"Q. Most of it you did? A. Part of it.

"Q. The biggest part of it, did n't you? A. Possibly, yes."

The defendant produced two books and testified that these were all he had showing copies of expirations. He was then asked,

"Well, this book here and that book there have been copied from . . . these expiration books, principally? A. In part, yes, sir.

"Q. Since this suit was commenced? A. At about that time.

.      .      .      .      .      .      .      .      .      .      .      .      .

"Q. Now this book shows the expiration of possibly a hundred policies, does n't it, or more? A. I don't know. I have n't counted them.

"Q. And this book here represents the expiration of possibly a hundred also, does it not? A. I don't know. I have n't counted it.

"Q. Now, Mr. Woodbury, the expirations that you have copied off in these books, are the expirations of fire and tornado insurance of policies that will expire in the future, is that not right? A. Well, supposed to be, yes.

"Q. Well, now, you know that is what it calls for, is n't it? A. That's what the book is.

"Q. Yes, and you intend to use these books throughout the country in soliciting insurance in the future for companies other than those represented by Mr. Morrison, don't you? A. I suppose so, yes.

"Q. Yes, well, that's what you intend to do, is n't it? A. Yes, sir."

It is manifest that the trial court was right in holding the plaintiff entitled, upon the undisputed facts, to the original books, and in ordering defendant to deliver them up; and it would seem to follow as a natural consequence that plaintiff was entitled to an order compelling the surrender of any copies taken from the originals by the defendant under the admitted circumstances, and to an injunction to restrain defendant from making use of such copies. There is no basis for any dispute over the facts; they are, with some reluctance, admitted by the defendant. After the action was begun to obtain possession of the original books, he procured or had made copies of portions, at least, of the originals, with the avowed purpose of using the information contained in them in connection with his services and relations to a new employer, a rival of plaintiff in the insurance business. The defendant's admissions further show that the copies were procured with the intention of using the copies in the event the court compelled him to deliver up the originals.

The fact that in the first action plaintiff did not allege the existence of copies nor seek to recover possession of any copies, would not affect his right to full relief, especially as both actions were tried as one. Quite naturally, plaintiff would not expect that copies would be made of the originals after the replevin action was brought and before the court could pass upon the rights of the parties. Besides, if the defendant is permitted to retain and make use of copies, the effect of the order requiring him to turn over the originals is entirely defeated, and the plaintiff's rights under the replevin action destroyed.

The difficulty of harmonizing the two rulings is fully recognized by counsel for the defendant. Without having served notice that he would ask a reversal or reëxamination of the order compelling defendant to turn over the original books to the plaintiff, the first point raised in the defendant's brief is:

"1. Plaintiff was not entitled, as a matter of law, to the possession of the ten expiration books, decreed him by the trial court."

Counsel being satisfied with his argument in support of the first proposition, proceeds then to argue that—

"2. If Morrison was not entitled under the law to the ten expiration books, certainly he could not be entitled to restrain the use of copies thereof, even if such copies existed, and this may have been some factor in controlling the decision of the court in that matter."

As suggested, there is no appeal from the court's decision with reference to the plaintiff's ownership and right to the possession of the original books. Indeed, it would seem from the defendant's admissions made at the trial that an appeal from that part of the judgment would have been useless. That stands as an adjudication that plaintiff is entitled to the original books, so that the only question left for determination is whether under the conceded facts and the admissions of the defendant, it was error to deny plaintiff the relief prayed for with respect to the copies made by defendant after the litigation was pending.

Some attempt is made by counsel for defendant to meet this feature of the case by the statement that—

"There was absolutely no evidence that copies thereof existed, to say nothing of Woodbury having them."

The answer to the statement is found in Woodbury's own testimony, already quoted. After the court determined in the first place that the plaintiff was entitled to the original books, the judgment permitting defendant to retain possession of the copies, which his evidence shows were made from the originals after the replevin action was brought, and for the admitted purpose of using them wrongfully against the plaintiff's rights, can find no justification in law. It merely permitted defendant to destroy the effect of the court's previous order, by retaining copies, with the conceded intention of using them against the plaintiff as effectually as the originals themselves could be used.

The law recognizes a property right in trade secrets and confidences. In 14 R. C. L. 402, it is said:

"The right thereto is in the nature of a property right in the principal or employer, to protect which a court of equity may, when its jurisdiction is properly invoked, extend its aid by an injunction restraining the one in whom the confidence has been reposed, from divulging it to third

persons or from taking advantage of it himself to the injury of the owner. . . . To entitle a person to this protection it is not necessary that the one intrusted with the secret should have been obligated by the express terms of a contract not to disclose it. . . . In fact it is said that, in the case of an employee, such an obligation exists in the absence of any stipulation to the contrary."

It is also said:

"Another instance, which is generally regarded as justifying the same relief, is the attempt by an employee to use, either solely for his personal interests or in connection with his services and relations to a new employer, lists of customers, knowledge of which was acquired by reason of his former employment and is regarded as confidential." (14 R. C. L. 403.)

It appears in the case at bar that the defendant helped to make the original books and from time to time added memoranda to them showing the dates and expirations of policies which he had written while in the plaintiff's employ. In 14 R. C. L. 403, it is said:

"Where such a situation is presented it is held that the right to relief is not affected by the fact that the list may have been added to by the employee's efforts."

In *Empire Steam Laundry v. Lozier*, 165 Cal. 95, it was held that—

"Knowledge acquired by such employee [the driver of a laundry wagon] during his employment, of the names and addresses of the customers along the route, is in the nature of a trade secret, or confidential communication, and equity will enjoin him, after the termination of his employment, from soliciting or receiving, on behalf of another laundryman, laundry work from any of such customers." (Syl. ¶ 3.)

The court held in that case that the list of customers, even though in part prepared by the defendant, was the absolute property of the plaintiff and was a valuable part of its property, citing the case of *Lamb v. Evans* (1893), 1 Ch. 218, where canvassers for a directory, after leaving the service of their former employer, used the data they had collected to assist a rival publication in procuring advertisements from the same parties. The injunction was granted, and the Chancellor said:

"What right has any agent to use materials obtained by him in the course of his employment and for his employer against the interest of that employer? I am not aware that he has any such right. Such a use is contrary to the relation which exists between principal and agent. It is contrary to the good faith of the employment, and good faith underlies the whole of an agent's obligations to his principal." (p. 226.)

It has been held that knowledge acquired by the canvassing agent of a grocery company of the names and addresses of its customers is knowledge against the misuse of which equity will protect as being in the nature of a trade secret. (*Hackett v. A. L. & J. J. Reynolds Co.*, 30 Misc. 733, 62 N. Y. Supp. 1076.)

In *Witkop & Holmes Co. v. Boyce*, 61 Misc. 126, 112 N. Y. Supp. 874, the plaintiff was engaged in the general business in the city of Buffalo of dealing in teas, coffees, spices, etc., and maintained branches in other cities. Much of its business was done through its agents and canvassers who were sent out and given written lists of the names and addresses of customers. It appears in that case that the contract with the defendant contained an express provision by which employees leaving the employ of the plaintiff agreed not to solicit, for another, business from plaintiff's customers. The defendant, after leaving the employ of the plaintiff, entered that of a competitor and immediately commenced soliciting orders from plaintiff's customers. The court granted an injunction, and held that—

"Independent of any express contract between the parties, equity will restrain the acts of which the plaintiff complains, and which the defendant threatens and claims the right to do."

In the present case, upon the admissions of the defendant, the plaintiff was entitled to the injunctive relief prayed for, and it was error to render judgment against him.

The judgment will be reversed and the cause remanded with directions to enter judgment for the plaintiff and against the defendant, requiring defendant to surrender into court all copies or lists taken from the original expiration books, perpetually enjoining him from using the same or making other copies or lists from the originals, and taxing the costs of the action against him.

Reversed and remanded.