KERR & ELLIOTT *v.* GREEN MOUNTAIN MUTUAL FIRE INSURANCE
COMPANY.

January Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and
JEFFORDS, JJ.

Opinion filed February 11, 1941

*Theriault & Hunt* for defendant.

*Norbert J. Towne* and *Carver & Lawson* for plaintiff.

STURTEVANT, J. This is an action of contract. The defendant pleaded the general issue and special matter in defense. Trial was by jury at the March term, 1940, of Washington County Court. The verdict and judgment thereon were for the plaintiffs and the case is here upon the defendant's exceptions.

The plaintiffs, partners in business, are now, and for more than ten years last past have been, conducting a general insurance agency at Northfield, Vermont. During all times material here they have had agency contracts with from thirty-five to

forty insurance companies, and they have had an agency contract with the defendant for the greater part of the time that they have been engaged in this business. Formerly this was verbal but on November 15, 1937, these parties entered into a written agreement by the terms of which the underwriting facilities of the defendant company were made available to the plaintiffs and they were authorized to receive and accept proposals for insurance in accordance with terms as therein stated. This agreement is on a single page printed form. At the top of the sheet in large, heavy type appear the following words:

"Green Mountain Mutual Fire Insurance Company, Inc."
"Agency Agreement"

The name of the defendant company is also printed in heavy, large type in the space provided for its signature at the bottom of the page.

The plaintiffs base this action upon paragraphs 2 and 6 of this agreement which are as follows:

" (2) In the event of termination of this Agreement, the Agent having promptly accounted for and paid over premiums for which he may be liable, the Agent's records, use and control of expirations shall remain the property of the Agent and be left in his undisputed possession; otherwise the records, use and control of expirations shall be vested in the Company."

" (6) This Agreement supersedes all previous agreements, whether oral or written, between the Company and Agent and may be terminated by either party at any time upon written notice to the other."

We first take up questions raised as to the special matter in defense.

In June, 1938, a disagreement arose between the parties concerning a settlement which the defendant made with one De-Faria whose automobile had been destroyed by fire. DeFaria had a policy which he obtained from the defendant company through the plaintiffs' agency covering this loss and he also had another policy with it, and so obtained, covering a dwelling

house at Northfield Falls to the insured amount of $7,000. The plaintiffs told the defendant in effect that they were not satisfied with the amount it was paying to settle the DeFaria car loss and they believed him entitled to more than the officers of the defendant said they were willing to pay. While this matter was being discussed the defendant notified the plaintiffs that the insurance on the DeFaria dwelling should be reduced to $4,000 or as an outside figure to not more than $5,000. The plaintiffs insisted that this reduction should not be made as under the circumstances they believed $7,000 not an excessive amount. There had been other similar differences between the parties and the plaintiffs finally set forth their position regarding these matters in a letter dated June 22, 1938, addressed to the defendant, and which was as follows:

"June 22, 1938

Henry Hudson
Green Mountain
Montpelier, Vt.
Dear Henry,

I have read with interest your last letter and have also read the endorsement you sent up on the DeFaria property and I have come to the conclusion that you and I do not see the same, either in settling losses or insurance in general and I still am of the opinion that I am somewhat correct.

If you and your Executive Committee desire to handle business this way I will leave it to you as you are running the Company. However, if this is final and you are to reduce the insurance on the DeFaria property you can come and get your supplies and discontinue your business with this agency and we will place the business elsewhere and then you and I will have no more arguments.

We cannot give you all the preferred business and if we find a company willing to assist us we will have to give them the good with the poor.

Cordially yours,
H. W. Elliott
Kerr & Elliott"

On June 28, 1938, the president of the defendant company called at the plaintiffs' office and after more discussion on these matters he took up most of the supplies furnished to the plaintiffs by the defendant and both parties considered the contract terminated at that time.

The plaintiffs contend in effect that whatever they did both before and after the termination of the contract they acted within their legal rights. They insist that under the agreement provisions they had a lawful right to make all reasonable effort, as they did after the contract was terminated, to induce each and all of the 214 assureds who held policies with the defendant company procured through the plaintiffs' agency to accept in lieu thereof policies in other companies when and as such former policies expired. They contend that the defendant interfered with their exercise of this right and in this action they seek to recover the damages so resulting to them.

The defendant claims in effect that the plaintiffs by their alleged unlawful conduct, "before, at, and since the termination of the agreement," have lost any and all rights which they might otherwise have had in or to the use and control of said expirations.

█ Concerning the conduct of the plaintiffs before and at the time of the termination of the agreement it was brought out in the cross examination of plaintiff Elliott that the plaintiffs could have had the $7,000 policy held by DeFaria cancelled and could then have transferred this risk to some one of the other companies which they represented without making an issue of the matter. That is, they could have done this without giving any reasons therefor. Here the plaintiffs were agents for from 35 to 40 companies engaged in the same general line of business. In *Port Investment Company, appellant,* v. *Oregon Mutual Fire Insurance Company et al.,* 163 Ore. 1, 94 Pac. 2d. 734, 124 A. L. R. 1342, 1350, in considering the circumstances where a fire insurance agent represents several companies, the Court stated that in such cases the agent "* * * solicits business, not on behalf of a particular company, but on behalf of his agency, and, when he has obtained the business, uses his own judgment in placing the insurance with one or more of the companies which he represents." In the case at bar the plaintiffs would have

no reason for availing themselves of the underwriting facilities of the defendant or any other company until they had first obtained an application for insurance which they wished some one of their companies to underwrite. Unless the customer himself specified the insurer, it would then become necessary for them to determine to which one or more of the companies they represented they would tender this business. It was because of these circumstances that the plaintiffs could have had the aforementioned DeFaria fire insurance policy cancelled and then could have placed this risk with some one or more of their other companies. In these respects this situation differed from that presented when an agent is engaged by a single principal to solicit business on behalf of that principal alone. *In re Chapman,* 59 Fed. 2d. 252, 253; *Stein* v. *National Life Association,* 105 Ga. 821, 32 S. E. 615, 46 L. R. A. 150, 152.

■ Under the terms of the contract the plaintiffs had the right to terminate it at any time upon written notice to the defendant. They could do this either with or without stating their reasons therefor. We are not here concerned with the question as to which of these parties was right in the matter of the amount that should have been paid in settlement of the DeFaria automobile loss or the amount of insurance that could properly be carried on the DeFaria dwelling. If the plaintiffs were not satisfied with the manner in which the defendant conducted its business they violated no provisions of their agreement either express or implied in so stating to it. Therefore, it follows that in writing and sending to the defendant the letter of June 22 as hereinbefore set out and acting thereon the plaintiffs lost no rights secured to them by the agreement.

■ We now come to the questions raised as to the plaintiffs' conduct after the termination of the contract. What were their rights as to the use and control of the expirations as therein stated? We are not here concerned with what the situation would be were it controlled by custom or by the application of the laws of agency either general or special and the agreement silent as to this subject matter. The answers to our questions are to be found in the agreement itself clearly expressed, free from ambiguity and in plain and understandable language. Under these circumstances the interpretation of this contract was

510

for the court. *Freeguard* v. *Bingham,* 108 Vt. 404, 406, 407, 187 Atl. 801; *Wood* v. *James,* 93 Vt. 36, 39, 106 Atl. 566.

■ Such an agreement is to be interpreted by its own language and the understanding of the parties must be deemed to be that which their own written instrument declares. *Freeguard* v. *Bingham, supra,* at pages 406 and 407; *Vermont Marble Company* v. *Eastman,* 91 Vt. 425, 444, 445, 101 Atl. 151; *Wood* v. *James, supra,* at 39 and 40.

■ In the insurance field the term ''expirations'' has a definite meaning. As to this it has been stated: ''The record known in insurance circles as expirations is in effect a record of the policy issued to the insured, which contains the date of issuance, name of the insured, expiration, amount, premiums, property covered and terms of insurance.'' *F. B. Miller Agency* v. *Home Ins. Co.,* 276 Ill. App. 418. *In re Chapman,* 59 Fed. 2d. 252, 253; 29 Am. Jr. 135, Sec. 116. In *Alliance Insurance Company* v. *City Realty Company,* 52 Fed. 2d. 271, 272, the court states: ''The well-known disposition of policyholders to accept policies offered to them in renewal of, or in lieu of, expiring policies renders valuable the expiration data of 'expirations' of an agency which ceases business.''

■ By the terms of this agreement, when the same was terminated all premiums due the company having been promptly paid the plaintiffs acquired ownership of the agents' records and also the use and control of the expirations here in question became their property. Being their property they were entitled to the sole use and benefit to be derived from same. The defendant had no property or other rights therein. It was reasonable that the plaintiffs preferred the property insured under the policies here in question should continue to be covered by policies issued through their agency. This could be done only by getting the policyholders to accept insurance with some one or more of the other companies represented by them. To give force or effect to the defendant's contention that the plaintiffs had an interest in the expirations in question only for the purpose of having the policies renewed in the defendant company is contrary to the clearly expressed intention of the parties as set forth in the agreement and requires reading into the contract something foreign to it. To so limit the plaintiffs' rights to the use and control of the expirations would be to give a meaning to the lan-

guage used in the agreement of which it is not fairly capable and to substitute another and different contract. This is never permissible. *Freeguard* v. *Bingham,* 108 Vt. 404, 407, 408, 187 Atl. 801; *Wood* v. *James,* 93 Vt. 36, 39, 106 Atl. 566, and cases there cited to this proposition.

It, therefore, follows that in using these expirations to place the business covered by the policies here in question with other companies for which the plaintiffs were acting as agents and to thus secure to themselves the continued benefits of such business, the plaintiffs were only exercising their legal rights secured to them by the terms of the agreement. Any interference by the defendant for the purpose of and tending to hinder them from so doing would be an invasion of such rights.

It, therefore, appears that the instruction to the jury to the effect that they need give no consideration to the question as to why the contract was terminated was correct and that the overruling of the defendant's motion for a directed verdict was without error.

While the defendant has cited several cases in support of its contentions made as to the questions here involved, in none of these are the rights of the agent controlled by a contract as in the case at bar and therefore such cases cited are not in point.

### EXCEPTIONS AS TO EVIDENCE

On June 30, 1938, defendant's secretary mailed to its policyholders the following circular notice:

"This is to advise that we have this day appointed Mr. Harry Salman of Northfield as our agent. If there is anything that Mr. Salman can do for you in the insurance line, kindly call and he will contact you immediately."

One of these notices was received in evidence subject to defendant's exception that it was immaterial and without tendency to show improper interference with plaintiffs' rights and also upon the promise of the plaintiffs to show that the defendant turned over to its new agent, Salman, a list of all the expirations here in question and that Salman proceeded to take plaintiffs' expirations away from them.

As to the question of materiality it is apparent from the wording of the notice that same might be construed as a solicitation of the insured to renew their policies at their expirations

512

through defendant's agent. From what has been hereinbefore stated it follows that this evidence was material.

As to the promise of plaintiffs' counsel at the time this evidence was offered, it appeared from the testimony of defendant's president that in the latter part of July or August, 1938, he, the witness, gave instructions not to make further use of the list of expirations here in question and that he notified agent Salman in particular to this effect. While other evidence might be pointed out tending to make good the promised connection this alone was sufficient to do so.

On August 11, 1938, defendant's agent Salman sent circular letters to two persons holding policies in the defendant company. In each letter the number and date of expiration of the policy held by the person addressed was stated and each letter expressed the agent's hope that the one addressed would continue his insurance with the defendant company. Each of these letters contained information included in the expirations which belonged to the plaintiffs and appears to have been sent out by Salman after he had been instructed by defendant's president not to make further use of these expirations. However, the defendant did not discharge its duty to the plaintiffs by merely giving the instructions to its agent. It had the further duty of seeing that such instructions were obeyed. Clearly these letters were admissible upon the issues in this case and their admissibility did not depend upon a showing of ''a great many like instances'', as contended by the defendant.

The defendant had exceptions to the evidence showing that at the time the agreement was terminated there were 214 of defendant's policies in force which had been procured through the plaintiffs' agency. The main objection to such evidence was upon the ground that there was no evidence of defendant's interference with all of these expirations. However, the circular letter dated June 30, 1938, which defendant's secretary mailed to its policyholders as hereinbefore set out was some evidence of such interference and although there was other evidence in the case having the same tendency, this alone would be sufficient as against the exception on the ground stated. The question raised here as to the effect of the plaintiffs' attempt to have these risks transferred to other companies which they represented is disposed of by what has been hereinbefore stated. This is also true

of the contention that plaintiffs should not have been permitted to introduce evidence concerning the whole list of 214 policyholders as though all of these expirations had been lost to them, the grounds of this objection being that only such expirations should be admitted as to which there was evidence tending to show interference by the defendant. So, too, the exception to plaintiff Elliott's testimony to the effect that they would have received commissions of $613.98 if all the expirations in question had been renewed with them, being on the same grounds, is without merit.

 Here the plaintiffs are seeking to recover damages alleged to have resulted to them from the defendant's wrongful interference with the plaintiffs' use and control of the expirations in question. In such an action the rule of damages has as its basis compensation to the plaintiff for the injury he has sustained. *Capital Garage Company* v. *Powell,* 98 Vt. 303, 307, 127 Atl. 375. While that was a tort case the rule is the same in contract cases such as the one at bar. *Capital Garage Company* v. *Powell, supra,* at 310. In considering the subject of damages in the case last cited, this Court at page 309 stated:

> "Compensation being the basis of the recovery in these actions, the wrongdoer must respond for gains prevented as well as for losses sustained, so far as the same are sufficiently alleged and proved. The question involved is not so much the right to recover these, as the sufficiency of the proof. The profits claimed must not be uncertain, speculative, or remote. But such as the proof reasonably shows that the plaintiff has been proximately deprived of by the defendant's wrongful act are recoverable. Prospective profits, to be sure, necessarily depend upon various conditions; but these are for the consideration of the jury, and are to be given such effect as the judgment of the jury dictates. *Allison* v. *Chandler,* 11 Mich. 542. They cannot be proved with exactness; but this, too, is for the consideration of the jury. 'They need not be susceptible of calculation with mathematical exactness,' says Chief Justice Rugg in Lowrie v. Castle, 235 Mass. 37, 113 N. E. 206, 'provided there is a sufficient foundation for a rational conclusion.' Evidence

of such profits is received, not as furnishing 'a measure of damages to be adopted by the jury, but to be taken into consideration by the jury to guide them' in arriving at a correct estimate of the plaintiff's loss. East Jersey Water Co. v. Bigelow, 60 N. J. Law, 201, 38 Atl. 631; Peshine v. Shepperson, 17 Grat. (Va.) 472, 94 Am. Dec. 468. The rule is familiar to this Court.''

Also, in the same case at page 310 it is stated: ''When lost profits are recoverable the rule to establish them is a liberal one.'' (See cases cited following this statement.) On the same page the Court continued as follows: ''As was said in *Collins v. Lavelle, supra* [19 R. I. 45, 31 Atl. 434], in speaking of evidence of past profits, 'this affords some reasonable basis to reckon from, as, in case of an established business, it is reasonable to presume that, if pursued in the same manner it will continue to yield a like profit.' ''

From what is above stated it follows that the evidence introduced as to commissions received annually by plaintiffs from renewals of policies held by the defendant company during the years 1928 to 1937 both inclusive, was admissible, same having been received under the expectation that it would be followed by evidence showing what percentage of renewals are actually made from year to year. This was shown to be 90 per cent. The exception upon the ground that the evidence in question was immaterial is not sustained. *Capital Garage Company v. Powell, supra*; 15 Am. Jur. 419, Sec. 26.

The evidence also showed that after the termination of the agreement the plaintiffs were successful in placing some of the risks covered by the aforementioned 214 policies with other companies. It also appeared what the commission on each of these policies would have been had same been renewed with the defendant.

While plaintiffs disclaimed any right of recovery as to commissions on these policies, they did make claim for work and expense in obtaining transfer of this business and in attempting to obtain transfer of the other policies, contending that such work and expense was made necessary by the defendant's unlawful interference with their right to use and control said expirations.

Ten of the 214 policies had not expired at the time of the trial. The plaintiff Elliott was permitted to give a list of these and state the amount of the renewal commission in each case should the same be renewed. This evidence was received over the defendant's exception upon the ground that it was immaterial.

██ The jury had evidence before it indicating what had happened to 95 per cent of the policies covered by the expirations here in question. This surely furnished a reasonable basis for arriving at a conclusion as to what would happen as to the other five per cent. *Capital Garage Company* v. *Powell, supra.* This exception is without merit.

In the July 14th, 1938, issue of the *News and Advertiser,* a newspaper published at Northfield, Vermont, the plaintiffs had the following inserted:

"NOTICE: FOR WHAT WE BELIEVE TO BE THE BEST INTEREST OF OUR MANY CUSTOMERS, WE DISCONTINUED OUR CONNECTIONS WITH THE GREEN MOUNTAIN MUTUAL FIRE INSURANCE CO. OF MONTPELIER, VERMONT, ON JUNE 29, 1938.

"AS USUAL WE WILL CONTINUE TO GIVE SERVICE OF ALL KINDS ON ALL POLICIES ISSUED BY US. ALL POLICIES WHICH EXPIRE WILL BE CARED FOR BEFORE THEIR EXPIRATION. *Insurance with Service.* KERR & ELLIOTT."

██ In the cross examination of the plaintiff Elliott, defendant's counsel asked the witness the following question: "In other words, you are here asking to recover commissions on business which you had publicly stated in the newspaper you will have nothing to do with, having in mind the interests of your patrons—is that the fact about it?" Upon plaintiffs' objection this question was excluded and defendant had an exception and claims here that such exclusion was a prejudicial restriction of the defendant's right of cross examination. The exclusion was proper. Here the witness had been cross examined at some length as to what the plaintiffs were seeking to recover in this action and a copy of the newspaper notice in question had been introduced in evidence. Under these circumstances it can not be

said that the right of cross examination, itself, was impaired by the action of the court and therefore error is not made to appear. *Congdon* v. *Torrey*, 95 Vt. 38, 42, 112 Atl. 202.

The defendant saved several exceptions to the charge, most of which are disposed of by what we have herein stated. These will not be further considered and we direct our attention to those remaining.

The court charged as a basis for the assessment of damages as follows: "If you come to the question of damages by reason of defendant's violation of the contract as to expirations, the plaintiffs are entitled to recover commissions at the rates agreed upon, as heretofore mentioned, on the amount of expirations which plaintiffs might reasonably have expected to secure if not interfered with by defendant in violation of the provision in said contract relating to expirations, less commissions on such expirations as the plaintiffs themselves actually obtained."

To this charge the defendant excepted. It is contended that if we assume that the evidence made a case for prospective damages, it could not be ruled as a matter of law, but should have been submitted to the jury under proper instructions as to whether the breach was entire or partial. *Remelee* v. *Hall*, 31 Vt. 582, 586, 76 Am. Dec. 140, is cited in support of this contention. That was a contract case and the plaintiff claimed that the defendant had breached his agreement to support the plaintiff and his daughter for the consideration and in the manner as set forth in the agreement. While the opinion in the case does not show the nature of the claimed breach of the agreement, the Court states that it might have been of a nature not to authorize a recovery for an entire breach or it might have been of such a nature as to have been properly considered as such. It it stated that it can not be said, as a proposition of law, that a breach of such a contract will, or will not, entitle a party to damages beyond what he has already in fact sustained but it becomes a question of fact for the jury under proper instructions whether the breach is entire or partial. That case is not controlling as to the question here. In the case at bar the contract had been terminated and thereafter the plaintiffs brought this action seeking to recover damages because of defendant's alleged unlawful interference with their right to use and control expirations concerning 214 policies held by defendant company. The acts com-

plained of as violations of the contract were complete when the suit was brought and they were alleged to extend to and concern each and all of the expirations in question. The plaintiffs could have but one recovery for these alleged wrongs.

Since there was evidence in the case from which the jury could reasonably find that the acts complained of would result in damages to the plaintiffs subsequent to the time of the trial and there also was evidence from which the jury could reasonably estimate the amount thereof, it follows that as to this exception the charge was without error. *Fulsome* v. *Town of Concord,* 46 Vt. 135, 141, 142; *Capital Garage Company* v. *Powell, supra*; *Goodrich* v. *Dorset Marble Company,* 60 Vt. 280, 13 Atl. 636.

There is no merit in the defendant's contention that the plaintiffs are not entitled to recover any damages for or on account of expirations subsequent to the date of the writ which was September 1, 1938. The right of action being established, damages which have accrued are to be computed to the time of trial, although accruing after the commencement of the action. *Goodrich* v. *Dorset Marble Company, supra,* at 283; *Spear* v. *Stacy,* 26 Vt. 61, 63.

The court in its charge in effect stated that unless the plaintiffs consented the defendant had no right to renew in its company any of the 214 policies with which we are here concerned even though it had not solicited such renewals, because to do so would be a violation of the contract in question. The defendant excepted to this instruction upon the grounds that it was not supported by the agreement and was contrary to the provisions thereof.

From what we have hereinbefore stated, it appears that at the termination of the contract, the plaintiffs became the owners of the agents' records and of the use and control of the expirations with which we are here concerned. They were entitled to all the benefits which they could derive from the lawful use of these property rights. They were entitled to the lawful enjoyment of these rights free from any interference therewith by the defendant. If the defendant renewed any policy here in question, even though such renewal was not solicited, it thereby brought about a situation making it impossible for the plaintiffs to obtain a transfer to another company of the risk covered by

such policy. It may be that the policyholder would not have permitted the risk to be so transferred even though the defendant had refused to renew such policy. However, any intentional and voluntary act on the part of the defendant which would directly interfere with the plaintiffs' rights to make all lawful effort to obtain a transfer of this business to other companies or any such act which would tend to make such effort of no effect would be an invasion of the plaintiffs' rights. The renewal of any of these policies by the defendant would be such an act, even though such renewal was not solicited by it. It follows that this instruction was without error.

The defendant excepted to the charge of the court which in effect instructed the jury that the plaintiffs were entitled to recover for extra labor and expense in attempting to protect their contract rights provided that such extra labor and expense resulted from the defendant's unlawful interference therewith.

The grounds of this exception were that only a small part of the expirations occurred before the defendant's president stopped any possible interference by it and that if plaintiffs failed to get those "so called renewals" such failure was in no way due to any interference by the defendant.

█ █ As to the first ground of the exception, while it appears that defendant's president gave instructions along these lines it does not appear that these instructions were obeyed. As to the other ground stated, the plaintiff Elliott had testified as to the amount of this extra work and expense and the fair value thereof. There being evidence tending to support the plaintiffs' claim as to this matter, the question was for the consideration of the jury.

The defendant submitted to the court several requests to charge. Among these was the following:

"If the plaintiffs' failure to obtain coverages following expirations was due to the voluntary choice of insured, then as to such coverages the plaintiff can not recover."

█ The defendant in its brief points to no specific instance to which the requested charge is applicable. Therefore error is not made to appear in the court's refusal to give this instruction.

All of the questions briefed by the defendant have been considered and no error is made to appear.

*Judgment affirmed.*