The **AETNA CASUALTY AND SURETY CO.,** a Corporation, **The Automobile Insurance Co.,** a Corporation, and **Woodrow W. Miller, Appellants,**

v.

**Adelbert W. LEE, Appellee.**

**No. 12451.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 21, 1955.

Decided Jan. 19, 1956.

Mr. Albert F. Beasley, Washington, D. C., for appellants Aetna Casualty & Surety Co. and The Automobile Ins. Co. and Mr. W. Cameron Burton, Washington, D. C., for appellant Woodrow W. Miller.

Mr. Albert Brick, Washington, D. C., for appellee. Miss Patricia Warren, Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, Chief Judge, and FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an appeal from a judgment for damages entered by the District Court in favor of the plaintiff-appellee, in accordance with a jury verdict. Plaintiff Lee has an established real estate and insurance business, representing a number of insurance companies, including the Aetna group (defendants here). Defendant Miller was employed by Lee to handle the insurance branch of his business. After some years he became dissatisfied and quit his job. On application to Aetna, he was made an "office agent" of Aetna, an arrangement whereby Miller was supplied by Aetna with office facilities next to (but not part of) the Aetna office, and accordingly received a slightly lower commission rate than is paid agents like Lee. It appears to have been understood that as an office agent the bulk of the business Miller developed would be given to Aetna. Over a period of more than a year after Miller became an office agent, approximately 60 persons who had previously insured with Aetna through Lee transferred their business to Miller, though continuing to insure with Aetna. A few of these transfers are not in issue, since they involve relatives of Miller and Lee does not make any claims with respect to them. However, as to the other transfers, Lee claims that they were the result of a conspiracy between Miller and Aetna, and it is essentially on the theory of conspiracy that Lee bases his action for damages.

Before discussing that theory and the evidence relating to it, we consider briefly other possible bases of liability. It appears to be suggested that Miller might be liable solely on the basis of soliciting his former employer's customers. But every insured who appeared as a witness testified that Miller did not solicit the transfer of business, and it was stipulated that all the other insureds would so testify. In any event, such so-

licitation alone would not give rise to liability, there being no agreement that Miller would not solicit or compete. 2 Restatement, Agency, § 393, Comment e; ibid. § 396. It is also contended that it was wrongful for Aetna to appoint Miller an office agent and then accept transfers of accounts from Lee to Miller. However, Lee's agency was not exclusive, and we can observe no basis for liability in Aetna's following the wishes of the customer (the insured) as to choice of agent. Northwest Underwriters v. Hamilton, 8 Cir., 1945, 151 F.2d 389; Beidler & Bookmyer v. Universal Ins. Co., 2 Cir., 1943, 134 F.2d 828. Appellee relies on Kerr & Elliott v. Green Mountain Mut. Fire Ins. Co., 1941, 111 Vt. 502, 18 A.2d 164, to the contrary. However, this was a case in which there was evidence that the defendant insurer and its agent made use of the expiration data belonging to plaintiff, a former agent, and solicited plaintiff's customers. To the extent that statements in the case can be construed as establishing a rule applicable when these factors are not present, we are not persuaded by the decision.[1] Similarly V. L. Phillips & Co. v. Pennsylvania Threshermen & Farmers Mut. Cas. Ins. Co., 4 Cir., 1952, 199 F.2d 244, certiorari denied, 1953, 345 U.S. 906, 73 S.Ct. 645, 97 L.Ed. 1342, involved solicitation of plaintiff's customers and specifically conditioned its result on unauthorized use of plaintiff's expiration records. 199 F.2d at page 249.

▉ We turn now to plaintiff-appellee's principal theory of recovery, the conspiracy theory. The essence of the conspiracy charged is that Aetna made available to Miller renewal records relating to Lee's accounts, by which Miller was enabled to solicit Lee's customers as their policies came due for renewal. Aet-

na and Miller concede that an agent is entitled to recover "upon proof of solicitation by and with the use of the 'expirations' records, either directly by the company or by another agent to whom the company has wrongfully communicated the records." Appellants' Reply Br. p. 3. The proof offered may be briefly summarized. One instance was established in which Miller was given by Aetna some information concerning Lee's accounts: two persons asked Miller to check the accuracy of audits of their accounts with Lee, and in one of these cases an official of Aetna checked the audit for Miller. However, the insureds had already made their copies of the audit information available to Miller, Aetna's audit records are separate from its renewal records, and in fact there was no transfer of the accounts in question.

Appellee also relies on an episode concerning a transfer of insurance business by the Epworth Methodist Church. The church's policy—written by Lee—did not expire until October 18, 1951. On August 6, 1951, Aetna prepared a renewal policy, substantially in advance of expiration of the old policy. In accordance with Aetna's custom, this would in due course be sent to Lee, the then agent, to tender to the insured for purposes of renewal. However, on August 15, the church in writing notified Aetna that Miller was its agent to handle renewal policies. On August 17 Aetna wrote Lee advising him of the church's letter and stating that the renewal business would be transferred as of August 31. A notation about the matter was made in Aetna's underwriting records.[2] The significance of this notation was argued here, though apparently not in the District Court. The point seems imma-

---

1. See 16 Appleman, Insurance Law and Practice 538, n. 53: "To put it bluntly, this case goes too far."

2. The notation follows:
   "Epworth Methodist Church:
   "Policy CX 14 (church burglary insurance) issued 10/22/48 for account of A. W. Lee, effective 10/18/48–51, premium $100.00, commission 20%. On this policy notation is made that agent is changed to W. W. Miller 8/31/51. Renewal policy CX 41 issued August 6, 1951 for account W. W. Miller, effective 10/19/51–54, premium $100.00, commission 20%."

terial, because both the church's letter requesting the transfer and Aetna's letter to Lee notifying him of the transfer speak in terms of the renewal policy only. In any event, there is no evidence that any part of the commission on the old policy was transferred from Lee to Miller. As to the renewal policy, there was no evidence that Aetna made any of its records with respect to the church's account available to Miller, an essential element in Lee's effort to prove conspiracy. We find nothing in this episode, regarding it in the light most favorable to the plaintiff-appellee, which would lend any support to the charge of conspiracy.

Contrary to the allegation of conspiracy was the unanimous testimony of the numerous insureds that Miller did not solicit the transfers of business. This testimony tends to negate the theory that Aetna conspired to make renewal records available to Miller so that he could solicit Lee's customers. There is other evidence tending to negate the theory that Aetna and Miller were engaged in a conspiracy to deprive Lee of business. Miller and officials of Aetna testified that Aetna officials had tried to dissuade Miller from leaving Lee. Aetna officials testified that after Miller left Lee, Aetna gave Lee's office considerable assistance in developing new accounts, and the record includes letters from Lee to Aetna in which Lee thanked Aetna for such assistance. There was testimony that the quarters of the office agents were separated from the Aetna office, and that office agents had no more access to the underwriting department, where the renewal records were kept, than did an outsider. Our study of the record convinces us that there was no substantial evidence in support of the conspiracy theory. The appropriate motions for a directed verdict and for judgment n. o. v. having been made in the District Court, we are constrained to conclude that the judgment should be reversed and judgment entered for defendants.

So ordered.