GEORGE J. AITKEN AND ELIZABETH M. AITKEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78599.    Filed November 8, 1960.

*John C. Graham, Esq.*, for the petitioners.
*Vernon R. Balmes, Esq.*, for the respondent.

**OPINION.**

Van Fossan, *Judge:* The issue is whether $10,000 received by petitioner was in consideration for the transfer of future insurance commissions or for the sale of fire and casualty insurance "expirations," and, if the latter, whether such sum was subject to capital gains treatment. These expirations included no rights to commissions.

The deficiency arose in part from respondent's action in disallowing certain deductions for legal expenses and depreciation. Petitioner has not contested these adjustments. Accordingly, a Rule 50 determination is necesssary.

Respondent argues, first, that the contract was in reality an assignment of an accrued right to future compensation for personal services rendered in the past, and that as such, the $10,000 was ordinary income. Secondly, assuming that the right to receive future compensation under the employment contract constituted a capital asset, respondent argues that the disposition of the "expirations" was neither a "sale" nor an "exchange" of a capital asset.

Petitioner, on the other hand, argues that the contract constituted a transfer of a valuable property right, i.e., insurance expirations, and that the receipt of $10,000 for that right was a capital gain.

In our opinion, respondent overlooked the subject matter of the contract in issue. The essential nature and definition of "expirations" was set forth in *V. L. Phillips & Co.* v. *Pennsylvania Threshermen, etc.,* 199 F. 2d 244 (C.A. 4), as follows (p. 246):

"Expirations" in the insurance field has a definite and well recognized meaning; it embodies the records of an insurance agency by which the agent has available a copy of the policy issued to the insured or records containing the date of the insurance policy, the name of the insured, the date of its expiration, the amount of insurance, premiums, property covered and terms of insurance. This information enables the agent to contact the insured before the existing contract expires and arms him with the information essential to secure another policy and to present to the insured a solution for his insurance requirements.

It has been determined that this information is of vital assistance to the agency in carrying on the insurance business and it has become, in the insurance field, recognized as a valuable asset in the nature of good will.

There is ample authority for the rule which is generally recognized that a fire or casualty insurance agent has a property right to the expirations on business produced by him. *Kelly* v. *American Mine Owners' Casualty Corporation*, 161 Va. 206, 170 S.E. 580; *Port Investment Co.* v. *Oregon Mutual Fire Insurance Company*, 163 Or. 1, 94 P. 2d 734, 124 A.L.R. 1342.

See, also, *Northwest Underwriters* v. *Hamilton*, 151 F. 2d 389 (C.A. 8), and *Heyl* v. *Emery & Kaufman, Limited*, 204 F. 2d 137 (C.A. 5).

Similarly, in *Holsinger Theis & Co.* v. *Holsinger*, 329 Ill. App. 460, 69 N.E. 2d 360, 365, it was stated:

A confidential record of an insurance agency showing the names and addresses of the policyholders, detailed information concerning the policies, together with the date of expiration and the like, are assets and trade secrets of such agency which a court of equity will protect against wrongful appropriation and use. * * *

See, also, *Woodruff* v. *Auto Owners Ins. Co.*, 300 Mich. 54, 1 N.W. 2d 450; *J. Alfred Mouton, Inc.* v. *Hebert*, 199 So. 172; and *Kerr & Elliott* v. *Green Mountain Mut. Fire Ins. Co.*, 111 Vt. 502, 18 A. 2d 164.

Considering the nature of expirations, we entertain no doubt that whether we refer to the expirations as trade secrets or confidences, customer lists, goodwill, or just intangibles in the nature of goodwill, they constituted capital assets. Sec. 1221, I.R.C. 1954. Cf. *Aaron Michaels*, 12 T.C. 17; *Elliott B. Smoak*, 43 B.T.A. 907.

While the cases referred to above concerned the right to "expirations" as between the agent and insurer, we think their observations apply equally to define the rights of the agent and subagent. The 1956 sales contract recited that petitioner owned the expirations, and he so testified. Although Lynn had access to the information, petitioner owned it and could have protected his right as against Lynn. Cf. *Morrison* v. *Woodbury*, 105 Kan. 617, 185 Pac. 735; and *Holsinger Theis & Co.* v. *Holsinger*, *supra*. It follows that when petitioner sold his property interests in the expirations to Lynn, the entire proceeds of the sale represented capital gain. Cf. *Aaron Michaels*, *supra*; *Elliott B. Smoak*, *supra*.

Respondent stresses what he calls petitioner's contract right to one-half the renewal commissions and reasons that these commissions were what was sold. The respondent has not established that such was the case. Instead, there is a recitation in the sales contract concerning the previous employment arrangement as constituting an agreement entitling petitioner to 50 per cent of the commissions on all *new* insurance he sold, and petitioner's undisputed testimony that he bargained for and sold "expirations." We are unaware of what arrangement had been made for the renewal commissions.

We have found as a fact, based on the undisputed evidence produced by petitioner, that the $10,000 represented payment for "expirations" and not for previously earned commissions. The case of *Estate of Thomas F. Remington*, 9 T.C. 99, is distinguishable since in that case the decedent's widow sold a preexisting right to be paid commissions for services rendered by her husband on the Statler account in the past.

Respondent argues that there was no "sale" or "exchange" of a capital asset. We pause only to comment that here we have the transfer of valuable property rights which do not terminate or vanish. The "expirations" existed after the contract, they having become the exclusive property of Lynn. The cases cited by respondent, e.g., *Leh v. Commissioner*, 260 F. 2d 489 (C.A. 9), affirming 27 T.C. 892, are distinguishable on that ground.

Remaining only is the question raised by respondent concerning the agreement not to compete. We have found as a fact that petitioner received no consideration for this agreement. Even if it were not so, the agreement was an integral part of the sales contract, giving meaning to the transfer, and as such it must be regarded "as being in effect a contributing element to the assets transferred." *Aaron Michaels, supra.*

*Decision will be entered under Rule 50.*