Estate of Coleman R. Freeman, Deceased, Walter B. Siwinski, Executor, and Mrs. Dorothy Freeman, Surviving Wife v. Commissioner.
Estate of Freeman v. Commissioner
Docket No. 4775-63.
United States Tax Court
T.C. Memo 1966-42; 1966 Tax Ct. Memo LEXIS 236; 25 T.C.M. (CCH) 244; T.C.M. (RIA) 66042; February 28, 1966
Isador Deckelman, for the petitioners. Dennis R. Powell, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency in the income tax of petitioner's decedent for 1961 in the amount of $984.65. [1] The petitioner asks that this deficiency be expunged and that it be granted a refund of $1,535.07. The only questions presented are (1) did an alleged deficit in the capital account of decedent's partner give rise to an allowable *237 bad debt deduction by the partnership in 1961 and (2) was decedent entitled to recognize a loss upon the distribution in liquidation of his partnership interest. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. The decedent and his wife, Dorothy Freeman, filed a timely joint income tax return for the calendar year 1961. They also filed an amended 1961 return on July 30, 1962, with an attached claim for refund. Both returns were filed with the district director of internal revenue for the district of Maryland. Freeman and Requardt, Inc., a partnership (sometimes hereinafter referred to as "partnership"), was formed in 1947 under the laws of the State of Maryland for the purpose of carrying on the business of insurance brokerage. Its fiscal year was from August 1 to July 31. From its inception until its liquidation on September 30, 1961, the only partners were Coleman R. Freeman and John M. Requardt, Jr. (sometimes hereinafter referred to as "Requardt"), who agreed to share equally in profits and losses of the business. The partners had agreed that either partner could draw *238 from the partnership, any amounts withdrawn to be charged to their capital accounts. The books and records of the partnership showed a deficit in Requardt's capital account of $18,960.94 as of July 31, 1961 and a deficit of $16,029.31 as of September 30, 1961. Requardt died on September 27, 1961. The partnership filed the proper partnership returns with the district director of internal revenue for the district of Maryland for its fiscal year 1961 and for its final period from August 1, 1961 to September 30, 1961. The latter was filed on July 30, 1962, and in it the partnership claimed a business bad debt deduction in the amount of $19,857.02. [2] The partnership during this period earned $7,655.42, but, because of this deduction, the partnership showed losses for the year of $12,201.60, of which decedent's share was stated to be $6,100.80. *239 The original 1961 return of petitioner's decedent, filed April 14, 1962, reported income from the partnership of $11,011.58 and expenses attributable thereto of $1,575.24, or a net income from the partnership of $9,436.34. On the amended 1961 return, filed July 30, 1962, he claimed as his distributable portion of the partnership loss the amount of $6,100.80 and, in addition, claimed a loss on liquidation of the partnership in the amount of $6,100.80 and requested a refund of $1,535.07. Respondent denied the request and, in addition, asserted a deficiency of $984.65 in taxes due to an adjustment in decedent's income from the partnership as a result of disallowing the partnership deduction of the $19,857.02 as a business bad debt. The books and records of the partnership showed that petitioner's decedent had a capital account of $22,899.76 as of September 30, 1961. The books and records also showed that petitioner's decedent received a distribution on September 30, 1961 of net assets having a book value of $6,870.45. Freeman and Requardt, Inc. (hereinafter sometimes referred to as "corporation"), was incorporated on June 26, 1961 under the laws of the State of Maryland. Prior to *240 the death of Requardt, no stock had been issued in the corporation and it had not engaged in business. The organizational meeting of the corporation was held on October 20, 1961, and stock of the corporation was issued as follows: Stockholder
Number of shares
Coleman R. Freeman
30
Dorothy L. Freeman (wife
of Coleman R. Freeman)
10
Douglas Freeman (sister
of Coleman R. Freeman)
10 At all times pertinent, these 50 shares were so held and constituted all of the issued and outstanding shares of the corporation. All assets and liabilities, including all accounts, of the partnership were transferred to the corporation on or about October 1, 1961. Neither Requardt's estate nor his widow received any consideration on the transfer of the partnership assets to the corporation. Prior to his death, Requardt had not agreed to the transfer of the partnership's assets and liabilities to a corporation owned and controlled by petitioner's decedent and his family. At the time of transfer, the partnership had a net book value of $6,870.45. The balance sheet of the partnership as of September 30, 1961 did not contain any value for good will, unearned commissions, expirations, *241 renewals, or similar items. The business bad debt deducted by the partnership, because of the alleged deficit in Requardt's capital account, was not evidenced by notes or other signed evidence of indebtedness. No interest was stated or paid and no fixed time for repayment was contemplated with respect to any deficiency in the account. Prior to Requardt's death, his widow had not been apprised that there was an alleged deficit in his capital account. Requardt's widow and attorney had demanded a partnership accounting, believing that Requardt's estate would receive some amount from the partnership, but, when told of the alleged deficit in Requardt's capital account, no longer made such demands. As a result, no formal partnership accounting took place. Neither petitioner's decedent nor the partnership ever filed a claim for the alleged deficit in Requardt's capital account with Requardt's estate. The accounting by Requardt's executors on its face indicated that the estate did not have sufficient assets to pay the claim had it been filed and, furthermore, did not reflect any partnership interest in Freeman and Requardt. On January 17, 1964, but as of July 1, 1963, the corporation *242 sold to the Werner Insurance Agency, Inc. (hereinafter sometimes referred to as "Werner"), its "goodwill and its renewal business" as of July 1, 1963 for $50 plus 50 percent of all renewal commissions from July 1, 1963 to June 30, 1966. Werner agreed to furnish a monthly accounting to the corporation. Opinion Petitioner seeks to sustain two deductions: (a) as an ordinary loss, an alleged business bad debt of a partnership, of which petitioner's decedent and one Requardt were the sole partners, arising out of an alleged deficit of $19,857.02 in Requardt's capital account on the books of the partnership, and (b) as a capital loss, $6,100.80, representing the excess of the capital account of petitioner's decedent on the books of the partnership over the alleged value of the assets of the partnership received by petitioner's decedent upon the liquidation of the partnership as the result of Requardt's death. Alternatively, petitioner claims that it is entitled to a business bad debt deduction in the amount of $16,029.31. Respondent resists petitioner's assertions on the grounds that a partner's capital account does not have the status of a debt and therefore a deficit therein cannot *243 constitute a deductible bad debt to the partnership; that, because petitioner's decedent received property other than cash, accounts receivable, and inventory on the liquidation of the partnership, a deductible loss on liquidation is precluded by section 731 of the Internal Revenue Code of 1954; and that, in any event, petitioner has not proven either that there was an actual deficit in Requardt's capital account or an actual loss suffered by petitioner's decedent on the liquidation. Basic to petitioner's position is the necessity of proving that there was in fact a deficit in Requardt's capital account and that petitioner's decedent in fact received on the liquidation of the partnership net assets having a value less than his thencapital account. No amount of bookkeeping legerdemain or manipulation of the words "bad debt," "deficit," or "loss" can obscure this crucial requirement. We hold that petitioner has failed to meet its burden of proof on this score. Consequently, we do not reach the other issues involved herein - namely, whether the characterization of the relationship between Requardt and the partnership with respect to the alleged deficit in his *244 capital account is such as to permit the deduction of a loss, under any circumstances, as a bad debt or otherwise; whether a deduction for any such loss is precluded by section 731; or whether certain portions of a deposition by Walter Siwinski relating to conversations alleged by him to have taken place with Requardt and petitioner's decedent are admissible in evidence. Concededly, if we limited ourselves, as petitioner would have us do, to the financial statements submitted by petitioner at the trial, we would have to accept as fact that there was a deficit in Requardt's capital account on September 30, 1961 and that the amount of the capital account of petitioner's decedent at the time of liquidation of the partnership on September 30, 1961 exceeded the net value of the assets received at that time by petitioner's decedent. But this Court is under no such inhibition. Book entries are not conclusive. Doyle v. Mitchell Brothers Co., 247 U.S. 179, 186 (1918); Richardson v. Commissioner, 264 F. 2d 400, 403 (C.A. 4, 1959), affirming in part a Memorandum Opinion of this Court; Bennett E. Meyers, 21 T.C. 331, 344 (1953). The existence of a deficit *245 in Requardt's capital account and a loss to petitioner's decedent on liquidation depends upon actual and not book values. The financial statements were admittedly taken from the books and records without independent verification. [3] Thus, we have no way of knowing whether figures for such items as accounts receivable, earned commissions, and accounts payable shown on the books and records in fact reflected actual values. Moreover, the balance sheet listed, as an asset, certain shares of stock in Petroleum Marketing Corp. at $120, but there is no evidence that such figure reflected fair market value. What is perhaps even more significant is the fact that the partnership may well have owned assets which were not carried in the books and records. The partnership had carried on an insurance business since 1947. It is common knowledge that such a business has expirations and renewals, assets which unquestionably can have value. See, e.g., Estate of Abraham Goldstein, 33 T.C. 1032 (1960) *246 (renewals); George J. Aitken, 35 T.C. 227 (1960) (expirations). Petitioner made no effort to show that the partnership did not possess such assets or to evaluate them if they existed. Indeed, what little evidence there is indicates that the partnership did have valuable assets in these respects; when the corporation which succeeded to the business of the partnership in October 1961 sold its business less than two years later, [4] such assets occupied an important place in the agreement of sale. Similarly, there is considerable evidence that the partnership had substantial amounts of unearned commissions to which it was entitled on September 30, 1961; during the fiscal periods ending May 31, 1962 and May 31, 1963, the successor corporation received aggregate commissions of $96,343.41. Finally, petitioner gave the back of its hand to the issue of whether there was any good will which attached to the business of the partnership in general or to Requardt's name in particular. What evidence there is indicates that such good will may well have existed *247 and that there was considerable effort on the part of petitioner's decedent to hold on to the business for which Requardt had been responsible prior to his death. The accountant for the partnership testified that, as between Requardt and petitioner's decedent, the former had "the larger individual accounts." In this connection, it should be noted that Requardt's name was included in the name of the successor corporation; although it was natural that this should have happened at the time the corporation was organized, since Requardt was still a partner, the continuance of Requardt's name in the corporate name after his death, when the corporation first started to do business and when petitioner's decedent and his family were the sole owners and in full control of the corporation, is not without significance to the existence of good will. On the other side of the coin is the fact that petitioner submitted no proof whatsoever as to actual amounts of the capital accounts of Requardt and petitioner's decedent. It relied exclusively on the unverified financial statements prepared by the accountants. This is far from sufficient. Thus, we have no way of knowing whether the amounts of capital *248 shown on the books and records as having been contributed were in fact contributed. Petitioner argued strenuously that the accounts of Requardt's estate showed that he was insolvent at the time of his death and that, as a consequence, no claim was filed against his estate and no formal accounting sought. For reasons analogous to those already stated, we do not think that Requardt's insolvency in fact has been shown. Indeed, we think it more likely that the reason why the partnership sought no accounting of Requardt's estate stems from the fact that such an accounting would have also involved an accounting by the partnership and might have, for reasons previously outlined in this opinion, produced a net figure in Requardt's favor. By the same token, it seems likely that Requardt's personal representatives sought no accounting of the partnership because they could not be sure that a net figure in Requardt's favor would result. In short, each side by informal mutual agreement adopted a live-and-let-live attitude, each feeling that in all probability their respective claims would at best produce a standoff. We see no reason to overturn this rationale. Decision will be entered for the *249 respondent. Footnotes
1. Coleman R. Freeman died on February 15, 1963, subsequent to the taxable year in question. Any reference herein to the petitioner's decedent shall be in reference to Coleman R. Freeman, deceased, Dorothy Freeman being a party to this proceeding only by reason of having filed a joint return with him.↩
2. The difference between $19,857.02 and a deficit shown in Requardt's capital account on September 30, 1961, namely, $16,029.31, is $3,827.71, which was Requardt's pro-rata share of the partnership income for the period of August 1, 1961 to September 30, 1961. We fail to see why the partnership did not deduct Requardt's income for this period from his deficit in the capital account in arriving at the figure to take as a deduction.↩
3. Petitioner's Exhibit 19 specifically so stated and the accountant for the partnership testified that "no opinion was expressed" as to the substantive accuracy of the financial statements.↩
4. The sale agreement was dated January 17, 1964 but recited that the transfers were to take place as of July 1, 1963.↩