**HEYL et al. v. EMERY & KAUFMAN, Limited.**

No. 14164.

United States Court of Appeals Fifth Circuit.

May 6, 1953.

Rehearing Denied June 1, 1953.

Claude F. Kammer, New Orleans, La., for appellant.

Robert E. Leake, Jr., New Orleans, La., Deutsch, Kerrigan & Stiles, New Orleans, La., W. Mente Benjamin, New Orleans, La., Advocates, for Emery & Kaufman, Ltd., appellee.

Before HOLMES, BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The appellant, Heyl, conducted a local fire and casualty insurance agency in New Orleans, Louisiana, for many years prior to his adjudication as a voluntary bankrupt. The appellee is one of his principal creditors. In the course of the bankruptcy proceedings the question arose as to whether "the expirations" of the bankrupt's insurance agency was an asset of the bankrupt estate and subject to sale for the benefit of creditors under the provisions of Section 70 of the Bankruptcy Act, Title 11 U.S.C.A. § 110, sub. a(5).[1] Pursuant to this decision, notice was given of the proposed sale of "the expirations in the above entitled bankruptcy proceedings." The record discloses the circumstances of the sale by which the appellee became the purchaser of the expirations for $300, as set forth in the margin.[2] Thereafter, Emery and Kaufman, Ltd., as such purchaser, filed a motion with the Bankruptcy Court reciting an order entered at the time of the sale directing the bankrupt "to turn over to the trustee herein within two weeks from this date all copies of the list of expirations, which list will be supplemented by the daily reports covering said expirations." It was alleged that the purchaser had thus secured two cardboard boxes of papers and documents, but that such delivery did not constitute full compliance with the order because the bankrupt failed to deliver all lists of expirations, "or, in any event, records substantially equivalent thereof." From subsequent proceedings, it is clear that the claimed delinquency of the bankrupt relates to his business ledger, which, in the content of its statement of accounts, contains, along with other business entries, information from which the bankrupt may reconstruct the information contained in the list of expirations and daily reports which the bankrupt did deliver to the trustee in accordance with the order of the Court. The expirations were not listed in the schedules and the ledger was not claimed as exempt or otherwise mentioned. The defense of the bankrupt was that the ledger book was exempt by virtue of the provisions of Article 644 of the Louisiana Code of Practice.[3] The bankrupt is presently employed as a local agent by a general agent upon a salary and bonus compensation arrangement. The

1. The question of the ownership of such expirations was not controverted since the general agency creditors holding contracts dealing with such expirations had agreed "if the expirations are an asset, that they may be sold by the trustee for the benefit of all of the creditors."

2. "By The Referee: This is a continued meeting of the creditors, and one of the purposes of the meeting is to offer the expirations for sale. There are about thirty-five or forty thousand dollars worth of premiums which represents about seven thousand dollars worth of commissions, roughly, and they will be offered for sale to the last and highest bidder for cash. Are there any offers for these expirations.
"By Mr. Charles Carriere: I bid $200.00.

"By Mr. Gayle, of Viven Insurance Agency: I bid $201.00.
"By Mr. Charles Carriere: I bid $225.00.
"By Mr. Gayle: I bid $230.00.
"By Mr. Charles Carriere: I bid $250.00.
"By Mr. Lee. Emery: I bid $300.00.
"By The Referee: Are there any other bids? I hear none and the expirations herein involved are sold to Mr. Lee Emery of Emery and Kaufman for $300.00 cash."

3. This Article renders exempt from seizure and sale "the tools and instruments and books and sewing machines, necessary for the exercise of his or her calling, trade or profession by which he or she makes a living * * *".

referee ordered immediate delivery of the ledger book to be made. Upon petition for review the District Judge, being of the opinion that the claim of exemption was not within the terms of the statute, and that as a result of the sale of the expirations the bankrupt was forbidden to solicit renewal insurance from any of the customers included in the list of expirations, affirmed the order of the referee. This appeal followed.

■ It is clear that the ledger or account book, over possession of which the parties dispute, considered only as an article, or even as a book of trade, is not the true point of contention. Actually, the right to delivery into its possession of the ledger book as a purchaser of the expirations at the bankruptcy sale is only the means adopted by the purchaser to present the contention that the bankrupt insurance agent was, as a consequence of the sale, forbidden to solicit his former customers. The bankrupt, while arguing his necessity for the book to prepare his income tax returns, in final analysis, relies upon the contention that the information contained in the book is necessary in the conduct of his business and to obtain a livelihood. The trial judge recognized that the real controversy was as to the right of possession and use of the information contained in the ledger book with reference to expirations. The substantial issue which mushrooms from the claim and counterclaim to the ledger book is whether in this case the purchaser of the expirations acquired thereby the sole and exclusive right of solicitation of the former customers of the bankrupt's insurance agency so that the bankrupt is debarred from soliciting them. In other words, what was the extent of the rights and privileges which passed to the purchaser at the bankruptcy sale? If the "property" or information evidenced by the book was exempt from seizure the bankrupt became precluded from asserting such exemption by the

unreversed order of the referee which directed a sale of the expirations. If the exclusive right of solicitation of the policyholders covered by the expirations did not pass by the sale the purchaser has no claim to the book. It has admittedly secured a list of expirations. These considerations require the denial of the motion of the appellee to dismiss the appeal as taken without leave of the Court from an order which involved less than $500.00. The ultimate question is the respective rights of the parties to solicit the renewals of customers making premium payments at the time of the sale of $35,000 or $40,000, and representing about $7,000 worth of commissions. Adjudication of the claims to the ledger book as a book will not dispose of the real controversy in the case and we proceed to consider what rights and privileges passed as a result of the sale. By these, but no further, is the appellant bound.

■ The term "expirations" has acquired a definite meaning in the insurance field, particularly with reference to the fire and casualty insurance business, and this is recognized by the Courts. The record known in insurance circles as "expirations" is, in effect, a copy of the policy issued to the insured, which contains the date of insurance, name of the insured, expiration, amount, premiums, property covered and terms of insurance.[4] Because of the peculiar nature of the agency relationship, in that the casualty or fire insurance agent, in soliciting insurance business, does not solicit on behalf of any particular company, but actually on behalf of the agency, and then allots the business to such one of the companies represented by him as he may determine, it is generally held that since the information obtained in such solicitation and in the preparation of the policies is gathered by the agent at his own expense, the expirations are the property of the agent.[5] It is also generally held that for these reasons such lists and information are

4. Northwest Underwriters v. Hamilton, 8 Cir., 151 F.2d 389, 391; Woodruff v. Auto Owners Ins. Co., 300 Mich. 54, 1 N.W. 2d 450, 453; Kerr & Elliott v. Green Moutain Mut. Fire Ins. Co., 111 Vt. 502, 18 A.2d 164, 168.

5. Port Investment Co. v. Oregon Mut. Fire Ins. Co., 163 Or. 1, 94 P.2d 734, 124 A.L.R. 1342; Alliance Ins. Co. v. City Realty Co., D.C., 52 F.2d 271.

not the kind of confidential lists or information which the agent has secured by virtue of his employment, and on behalf of his principal, and is therefore in good conscience prohibited from using to the disadvantage of the principal after termination of the agency.[6]

The expirations of a fire or casualty insurance agency constitute property, the ownership of which secures varying rights and privileges. Such rights, in the aggregate, render the expirations one of the most valuable features of an insurance agency. This is the testimony here. However, it further appears from the testimony that this value is subject to division and diminishment dependent, in any case, upon whether the seller conveys not only the expirations record but, as a part of the sale, likewise agrees to discontinue insurance solicitation, at least for a reasonable period of time. The legal effect of such an agreement is to grant the purchaser the exclusive right to the use and benefit of the expiration records. If this right be not granted the testimony is that the value of the expirations would be small. One witness states it that the purchaser would probably get 5% of the renewals, and the seller, not bound to refrain from similar use of the records, would get the rest. It is nevertheless recognized that the records of expirations and the information thereby conveyed, standing alone, have a value in that they furnish "leads", and an opportunity for timely solicitation of an insured just before his existing insurance expires, with consequent opportunity to secure the business. Another item of value in expirations arises from the well known and judicially recognized disposition of policyholders to accept policies offered to them in renewal of, or in lieu of, expiring policies when such renewal policies are tendered by the agent previously handling this business for the insured.[7] Another element of value inherent in ownership of such expirations may be said to be the insurance company's right to freedom from interference by the agent in the solicitation of insurance customers of the local agent, and also the exemption from the general rule of agency in the instances to which we have adverted. It seems clear that, dependent upon the terms of the conveyance or contract, each or all of these rights are proper subject of sale, scaling from the whole, resulting from the agreement by seller to refrain from solicitation of insurance,[8] to a part, with the result that it may be that both the owner and another may be entitled to the use and benefit of the list of expirations and the information to be gained therefrom.[9]

■ We have indulged the above discussion to illustrate that while expirations are property they are property of a peculiar nature, the attributes and value of which are affected by many circumstances and conditions not present in the usual assets of a bankrupt estate which are sold for the benefit of creditors. It is with such a sale that we are now concerned. We find no adjudicated case dealing with this precise question and we determine the question by interpretation and application of the intent and purpose of the bankruptcy statute, particularly Section 70 thereof, supra, which contemplates a sale of all assets, or property "which prior to the filing of the petition he [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him". It would be a manifest preversion of the statute to hold that the asset of expirations embraced also the personal right of the bankrupt agency to contractually stipulate against interference on his part with the customers represented by such expiration records. The power and effect of such a permissible stipulation does not pass to the trustee as a part of the asset of expirations and is not properly subject to conveyance as against the bankrupt by the trustee's sale. The situation is the same as if the bankrupt had made a sale of the expirations without any express or implied

---

6. Restatement, Agency, Vol. 2, Secs. 395, 396.

7. Kerr & Elliott v. Green Mountain Mut. Fire Ins. Co., supra. Alliance Ins. Co. v. City Realty Co., supra.

8. Cottingham v. Engler, Tex.Civ.App., 178 S.W.2d 148.

9. Port Investment Co. v. Oregon Mut. Fire Ins. Co., supra.

warranty or collateral agreement whatever. In such a case we think the purchaser would be properly entitled to use and enjoy the information and right of solicitation, but that the seller would not become thereby bound to refrain from like solicitation of his former customers. This is the effect of the testimony in the record of men of long and varied experience in the insurance business. We think it also in accordance with law. It is true that this holding reduces, in a sense, the value of the expirations. But it is required by the nature of the property and the personal rights which are necessary to be conveyed to create a greater value for the asset. Since the only question here is whether the purchaser obtained the exclusive right of solicitation of the customers included within the expirations, there is, of course, no occasion to precisely delineate other rights which the purchaser may have secured.

From the conclusions which we have announced it follows that when the purchaser secured the list of expirations turned over to it by the bankrupt it obtained all that was properly ordered sold by the referee; that it is not entitled thereby to prevent the bankrupt from the solicitation of the insurance business of his former customers, even when this is done by the aid of records equivalent to the expirations. Consequently, the purchaser may not be permitted to achieve such a result by securing the delivery of the ledger, which was not purchased, nor by any other means of judicial coercion. The purchaser established no ground which authorized the delivery of the ledger to it.

The Court erred in adjudging in effect that the bankrupt was divested of any right to solicit the insurance business of his former customers included in the expirations, and in affirming the order requiring the delivery of the ledger book of the bankrupt to the purchaser as a means of preventing his competition with the purchaser at the bankruptcy sale.

The judgment is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

Judgment reversed.