MOSSLER ACCEPTANCE COMPANY, d/b/a Allen-Parker Company, Appellant,

v.

Coy Elmo MARTIN, also known as C. E. Martin, t/d/b/a Jack Martin Newer Cars, Appellee.

No. 19783.

United States Court of Appeals Fifth Circuit.

Aug. 15, 1963.

Rehearing Denied Sept. 23, 1963.

Jackson A. Cargill, of Warrick, Cargill & LeFevre, Winter Park, Fla., Leslie A. Todd, Robert I. Shapiro, of Pallot, Marks, Lundeen, Poppell & Horwich, Miami, Fla., for appellant.

J. Russell Hornsby, Dominick J. Salfi, Orlando, Fla., for appellee.

Before JONES, BROWN and LEWIS,[*] Circuit Judges.

JONES, Circuit Judge.

The appellant, Mossler Acceptance Company, filed an involuntary petition in bankruptcy against the appellee, Coy Elmo Martin. The issue of insolvency of Martin was submitted to a jury. The jury returned a verdict that Martin was solvent between the decisive dates and judgment was entered for him. Mossler has appealed. Two questions are presented; first, did the evidence require a directed verdict, or a judgment notwithstanding the verdict, or a new trial; and second, was the argument of Martin's counsel to the jury so prejudicial as to require reversal. Martin had been a used car dealer in Orlando, Florida. Mossler Acceptance Company, which did business as Allen-Parker Company, handled most of Martin's financing on a floor-plan basis. It was his principal creditor.

Excluding as assets property held jointly by Martin and his wife by the entirety [1] and excluding as liabilities obligations which were charges against jointly held property, the Martin balance sheet took this form:

### ASSETS

| | |
|---|---:|
| Cash | $ 4,158.63 |
| Rocket washers | 4,492.00 |
| Electric sign | 2,500.00 |
| Leasehold improvements | 20,000.00 |
| Good will | 30,000.00 |
| Life insurance values | 7,300.00 |
| Stock—Florida Auction | 200.00 |
| —Presidential Insurance | 158.60 |
| —Empire Studios | 390.00 |
| | $69,199.23 |

---

[*] Of the Tenth Circuit, sitting by designation.

[1] Newman v. Equitable Life Assurance Society, 119 Fla. 641, 160 So. 745.

## LIABILITIES

| | |
|---|---|
| Accounts payable | 3,953.17 |
| Accrued rent | 300.00 |
| Florida Auto Auction | 635.00 |
| Allen-Parker Co. | 51,307.07 |
| Allen-Parker Co. | 3,061.88 |
| | $59,257.12 |

The resulting net worth, based on the foregoing schedules is $ 9,942.11

Martin would add other assets described and valued by him as follows:

| | |
|---|---|
| Bird dogs | 2,000.00 |
| Guns | 1,500.00 |
| Personal clothing | 1,500.00 |
| Cameras and equipment | 500.00 |
| One-year oral lease | 7,200.00 |
| Skiing equipment | 300.00 |
| | $13,000.00 |

These additions would increase Martin's claimed net worth figure to about $23,000. But some of the items and the values placed on them call for scrutiny.

 Martin claimed to have a one-year oral lease on a used car sales lot and claimed a value for it of $7,200. At one time Martin had a written lease on the property. It had expired some years ago. Martin testified that he had an agreement that he would have a year's notice to vacate. He paid $300 per month rental. It did not appear that he had any obligation to continue his occupancy for a year or for any other period of time. Under the Florida law the most that Martin could have had was a tenancy at will from month to month.[2] The estate of a tenant at will is not susceptible of assignment or grant[3] and hence is not to be reckoned as an asset in determining the issue of solvency in a bankruptcy proceeding. The $7,200 claimed valuation on the so-called leasehold should be eliminated.

Martin claimed a value of $20,000 on leasehold improvements which he had a right to remove. He had been using the lot for fourteen years. He stated that his improvements were lighting system, fill, black topping, an office, "and so forth." These, he said, he had a right to remove. It cost him, so he testified, "more than $20,000 to improve the lot." This investment, in addition to the cost of a twenty-four-foot-square office building and lighting equipment, was made in fill and black top paving. Martin testified, "When I first moved to that location it was a jungle. We had to put in from six to ten feet of fill dirt from the street on back. That cost a lot of money." He said he could take the paving and the fill dirt as well as the office building and the lighting equipment. His claim of his right of removal was thus stated, "It is [in] my formal lease that I take everything. I can take everything with me that was in the formal lease, and nothing was said about it in this oral agreement." We have considerable doubts that the right of removal of paving and fill reserved in a written lease could be removed by a tenant at will long after the expiration of the lease. No matter how that doubt may be resolved, we are without any doubt that if the paving and fill be removed their value would be much less than the "lot of money" they cost, if indeed the value of the removed fill and paving would equal the cost of removal.

 In considering the item of good will, which is in the balance sheet at a valuation of $30,000, it is to be kept in mind that Martin had been out of business for five or six months. He asserted that he was put out of business rather than going out of business, but this seems immaterial here. It is to be noted that there is no inventory or stock in trade shown on the balance sheet and Martin had no used cars. Good will, as an asset having value, can exist only as appurtenant to or as an incident of a going concern or operating business and, as a general rule it cannot be disposed of separately from the business of which it is a

---

2. Fla.Stat.Ann. §§ 83.01–83.04; Painter v. Town of Groveland, Fla., 79 So.2d 765.

3. 51 C.J.S. Landlord and Tenant § 156 p. 762; Spiritwood Grain Co. v. Northern

part.[4] At the time as of which solvency or insolvency is to be determined, Martin's used car business was "financially dead or mortally wounded."[5] There was no business as such which could have been sold, with good will included, for providing funds for the payment of Martin's obligations. In commenting on the question as to whether and under what circumstances good will constitutes an independent item to be included in the aggregate of a debtor's property, Collier has commented that "The courts have quickly discounted fantastic claims of such assets and generally exhibited a great reluctance to accept good will as a separate asset, particularly where the enterprise was already in a notoriously embarrassed condition." 1 Collier on Bankruptcy, 14th Ed. 120, Par. 1.19[3]. Nearly all of Martin's bank account had been assigned by him or was impounded by a tax levy; he had no stock in trade and owed nearly sixty thousand dollars. It follows inevitably and inexorably that there was no good will which should have been included in Martin's balance sheet as an asset to which a value was assigned.

We agree with the Seventh Circuit in its statement that, "To determine whether a debtor is solvent under the balance sheet test adopted by the National Bankruptcy Act is often a difficult task. It is apparent, however, that the Act assumes ability of the debtor to pay his obligations in a reasonable period of time."[6] Solvency presupposes an ability to make ultimate payment of the obligations then owed from the assets then owned. It seems clear that since Martin had no good will to which a value should be assigned, he could not have discharged his obligations from his assets within a reasonable time or at any future time. Removing the leasehold from the scheduled assets made the asset deficiency greater. Martin was insolvent and this was demonstrated by his own testimony with nothing to indicate otherwise. The district court should have directed a verdict or entered a judgment notwithstanding the verdict.

The other question relates to the argument of counsel for Martin. In argument Mossler was referred to as brutal, inhuman, ruthless, indecent and cold-blooded. Counsel urged that Martin be found not a bankrupt so that he could go back and make some money and pay his creditors. Reference was made to the stigma of bankruptcy, and to Martin's wife, his children and his future. Of course all of this was immaterial and improper. The issue, and the only issue, was whether Martin was insolvent by the statutory test. It may explain the verdict of the jury. The appellant admits that its objections may have been insufficient to preserve the error. The question need not be decided as we reverse on the evidentiary ground.

The judgment will be reversed and the cause remanded with directions to the district court to enter a judgment notwithstanding the verdict, finding the appellee, Coy Elmo Martin, insolvent, and to take such further proceedings as may be proper.

Reversed and remanded.

Pacific Railway Co., 8th Cir., 1950, 179 F.2d 338.

4. Metropolitan Nat. Bank of New York v. St. Louis Dispatch Co., 149 U.S. 436, 13 S.Ct. 944, 37 L.Ed. 799; Estate of Masquelette v. Commissioner, 5th Cir., 1956, 239 F.2d 322; Mitchell v. Investment Securities Co., 5th Cir., 1933, 67 F.2d

669; A. Harris & Co. v. Lucas, 5th Cir., 1931, 48 F.2d 187; Sawilowsky v. Brown, 5th Cir., 1923, 288 F. 533.

5. Langham, Langston & Burnett v. Blanchard, 5th Cir., 1957, 246 F.2d 529.

6. In re United Finance Corporation, 7th Cir., 1939, 104 F.2d 593.