**David L. TRASK, Trustee in Bankruptcy of Magic Spuds, Inc., et al., Appellants,**

v.

**Carl SUSSKIND et al., Appellees.**

**No. 23051.**

United States Court of Appeals Fifth Circuit.

April 5, 1967.

Irving M. Wolff, Miami, Fla., for appellants.

A. M. Sandler, Martin L. Sandler, of Sandler & Sandler, Eugene C. Heiman, of Heiman & Heiman, Miami, Fla., for appellees.

Before GEWIN and GOLDBERG, Circuit Judges, and SPEARS, District Judge.

SPEARS, District Judge:

This suit was brought as a plenary action by David L. Trask, Trustee in Bankruptcy for six Florida corporations, Magic Spuds, Inc.; Miami Produce Company; United Wholesale Grocers, Inc.; Produce Distributors, Inc., hereinafter called Produce; Frankmaster Food Products, Inc., hereinafter called Frankmaster; and Abco Trading Company. The suit was brought against Edward Dokson, Harriet Dokson and Jack Weinstein, who were stockholders, officers, and/or directors of the bankrupt corporations, and against Carl and Martha Susskind, individually, and as Trustees for their minor children, who were directors and stockholders of United Purveyors, Inc., and against United Pur-

veyors, Inc., hereinafter called United Purveyors.

The six bankrupt corporations were operated as a unit and were engaged in selling wholesale produce, including fresh fruits and vegetables, frozen foods and canned goods to restaurants, hotels and other large establishments in and around Miami, Florida.

The petition alleged certain violations of the Bankruptcy Act, namely, 11 U.S.C. §§ 46, 96, 107, and 110, in that the bankrupt corporations had attempted to defraud creditors by making certain preferential transfers of corporate assets to United Purveyors. The case was heard without a jury and at the close of plaintiffs' evidence the trial court entered an "involuntary dismissal" under Rule 41 (b) F.R.Civ.P. From that action this appeal was taken.

Three questions are presented: First, whether the bankrupt corporations made a fraudulent transfer of goodwill and customer lists to United Purveyors; Second, whether Produce made a fraudulent transfer of a leasehold interest to United Purveyors; and Third, whether the trial court erred in refusing to allow appellants' expert witness to testify because appellants' attorney had not furnished to opposing counsel an extract of his testimony prior to trial as required by the pre-trial stipulation.

When the trial court entertains a motion for involuntary dismissal under Rule 41(b) F.R.Civ.P., it becomes his duty to weigh the evidence. If he finds plaintiff's evidence insufficient and grants the motion, he must make findings of fact and conclusions of law. This was done. In order to prevail on their contentions regarding the fraudulent transfer of goodwill, customer lists and leasehold interest, appellants must necessarily show that the trial court's "findings of fact and conclusions of law" concerning these questions are "clearly erroneous." Benton v. Blair, 228 F.2d 55 (5th Cir. 1956), Daniel v. United States, 234 F.2d 102 (5th Cir. 1956) cert. den. 352 U.S. 971, 77 S.Ct. 362, 1 L.Ed.2d 324. See also Palmentere

v. Campbell, 344 F.2d 234 (8th Cir. 1965), Ellis v. Carter, 328 F.2d 573 (9th Cir. 1964), United States v. Huck Manufacturing. Co., 227 F.Supp. 791 (E.D.Mich.1964) affirmed 382 U.S. 197, 86 S.Ct. 385, 15 L.Ed.2d 268, Global Commerce Corporation v. Clark-Babbitt Industries, Inc., 255 F.2d 105 (2nd Cir. 1958). Since we are not left with the definite and firm conviction, based upon the entire evidence, that a mistake has been committed in relation to the findings and conclusions, and since we feel that the trial court properly exercised its discretion in refusing to allow appellants' expert to testify, we affirm.

## I.

In 1952, Carl and Martha Susskind caused a loan of $100,000 to be made on behalf of their two minor children to Benel, Inc. Benel, in turn, loaned a portion of the money to Frankmaster and Produce, who secured the advances by assigning their accounts receivable. Benel used the remainder of the money to purchase delivery trucks which were rented to the bankrupts. As security for the $100,000 loan, the corporate capital stock of Benel was endorsed in blank and deposited with Susskind and the accounts receivable of Benel were pledged to Susskind. No payments of principal were ever made on the loan, but interest in varying amounts was paid periodically.

. Appellants' theory of the case was that during the summer of 1961, Susskind learned of the critical financial condition of the corporations, and after an unsuccessful attempt to secure further collateral on the $100,000 loan, he exercised his option to purchase the stock of Benel, and thereby caused the six corporations to declare bankruptcy. They argue that in order to maximize their personal gain, to the detriment of creditors, the appellees devised a scheme to transfer the goodwill and business customers of the bankrupts to another corporation called United Purveyors. At this time the stock of United Purveyors was wholly owned by the Susskind family and the

individual members of the family were its officers and directors.

To support their contention of fraudulent transfer of assets, appellants proved that on August 26, 1961, the day after the six corporations ceased doing business, Edward Dokson and Jack Weinstein, both of whom had previously solicited business for the bankrupt corporations, began soliciting business on behalf of United Purveyors. Further, United Purveyors, which had previously sold only frozen seafood, immediately expanded its line of products to include most products handled by the six bankrupts. Weinstein and Dokson informed their customers that in the future they would be billed by United Purveyors, and not by the bankrupt corporations. The trial court found that appellants had failed to establish that the bankrupts had suffered any damage as a result of these activities. In doing so, it relied on evidence that the customer names and businesses to which the bankrupts sold were readily obtainable in classified telephone directories and other similar sources. There was also evidence that United Purveyors was already familiar with the customers of the bankrupts since United Purveyors had been soliciting their business in frozen seafood products for some time before the bankrupt corporations ceased doing business.

"Goodwill" may, under proper circumstances constitute an asset in the hands of the trustee, and as this Court held in Sawilowsky v. Brown, 288 F. 533 (5th Cir. 1923), the sale of a bankrupt business by the trustee may validly include the goodwill and trade name of the bankrupt. Ordinarily, goodwill cannot be transferred separate and apart from tangible assets, and there was no evidence that any attempt was made at any time to sell or transfer either of the corporations as a going concern.

Appellants, however, in an attempt to establish a transfer of goodwill and customer lists rely on the fact that Weinstein and Dokson began soliciting for United Purveyors. The evidence showed that although the supposed "transition"

from the bankrupt corporations to United Purveyors was very smooth, fifty to sixty percent of the bankrupts' prior business went to competitors instead of to United Purveyors. The right of an individual who declares bankruptcy to again engage in the same business activity is not a matter of dispute. Heyl v. Emery & Kaufman Ltd., 204 F.2d 137 (5th Cir. 1953). In *Heyl* the bankrupt had operated an insurance agency for some years prior to his bankruptcy. During the bankruptcy proceedings the insurance "expirations" were sold to a creditor. The question presented to the court was whether the purchase of the "expirations" barred subsequent solicitations by the bankrupt. This court held that the bankrupt was not precluded from soliciting his former customers. There is no reason why the employees of a corporation should not have the same right to engage in the same business activity when the corporation declares bankruptcy.

## II.

On October 2, 1950, Dokhorn Realty Corporation, a corporation allegedly controlled by Dokson, leased certain premises to Produce for ten years with an option for an additional five years at an annual rate of $5,400. The lease provided no specific manner in which the option should be exercised. After the original ten year term had expired, Produce continued to occupy the major part of the premises and paid the monthly rental, but took no other affirmative action which could be construed as exercising the option. Produce had, at some time in the past, subleased a portion of the premises to United Purveyors. On August 9, 1961, a letter was written by the attorney for Dokhorn Realty to Produce advising them that the "month-to-month tenancy" would be terminated on August 31, 1961, and that Dokhorn would, after that date, deal directly with United Purveyors. This notice to vacate was accepted by Produce. On August 15, 1961, Dokhorn leased part of the premises to United Purveyors for one year at $780 per month. On

August 31, 1961, a superseding lease agreement was signed between Dokhorn Realty and United Purveyors at an annual rate of $7,800, covering the entire property originally leased to Produce. The Trustee argues that the option in the 1950 lease had been exercised, and when Produce vacated and allowed the premises to be leased to its own sub-lessee, at a rate above that which it was paying, it fraudulently transferred an asset which should have been included in its bankruptcy estate. On the other hand, the appellees argued and the trial court found, that under Florida law, the payment of rent by Produce after the expiration of the original ten-year term, and its acceptance by Dokhorn, did not constitute an exercise of the option, but that Produce became merely a tenant at sufferance, which was terminated by giving notice to vacate.

The pertinent Florida statute, Florida Statutes Annotated, Section 83.04, provides as follows:

"When any tenancy shall have been created by an instrument of writing and the term of which such tenancy is limited therein shall have expired and the tenant shall hold over in the possession of said premises without renewing the said lease by some further instrument of writing then such holding over shall be construed to be a tenancy at sufferance, and the mere payment or acceptance of rent shall not be construed to be a renewal of the said term, but if such holding over be continued with the written consent of the lessor then such tenancy shall become a tenancy at will under the provisions of this law."

In Brown v. Markham, 56 Fla. 202, 48 So. 39 (1909), the Supreme Court of Florida construed this statute in a case involving an option to renew, and said that such an option was subject to the provisions of the statute. The Court went on to say that in the absence of an instrument in writing extending the lease, the lessee was a tenant at sufferance. This was recently followed in Painter v. Town of Groveland, 79 So.2d 765 (Fla.1955).

This Court held in Mossler Acceptance Co. v. Jack Martin Newer Cars, 322 F.2d 183 (5th Cir. 1963) cert. den. 376 U.S. 921, 84 S.Ct. 679, 11 L.Ed.2d 616, that under Florida law the estate of a tenant at will was not susceptible of assignment or grant, and, therefore, was not to be included as an asset in determining the issue of solvency in a bankruptcy proceeding. We conclude that the trial judge was correct in finding that under the circumstances of this case Produce was a tenant at sufferance, and that the payment of rent did not constitute an exercise of the option.

### III.

During the trial, appellants' counsel called an expert witness to testify as to the value of the assets allegedly transferred to United Purveyors. Counsel for appellees immediately objected on the ground that no extract of the report of the expert had been furnished to him, as required by the standing rule governing pre-trial conferences in the district; that when he was notified that the expert would be called, he wrote appellants' counsel asking for the extract; that appellants' counsel responded promising the extract to him; but that the extract was never furnished. Appellants' counsel offered no excuse for the neglect, other than the fact that the expert had never filed the extract with him. The trial judge refused to allow the witness to testify. Failure to supply the extract, obviously necessary for an enlightened cross-examination of the expert witness, was unfair to appellees, and since the rule is a reasonable one, the court properly exercised its discretion in excluding the proffered testimony.

The judgment of the trial court is AFFIRMED.