SPOKANE VALLEY GENERAL HOSPITAL, INC., a Washington Corporation; and American Medicorp, Inc., A Delaware Corporation, Plaintiffs-Appellees,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services;[*] Blue Cross Association, an Illinois Corporation; and Blue Cross Washington/Alaska, Inc., A Washington Corporation, Defendants-Appellants.

No. 81–3061.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 1, 1982.

Decided Jan. 24, 1983.

---

* We substitute the name Richard S. Schweiker, the successor to the original defendant Joseph B. Califano, and the Department of Health and Human Services for the Department of Health, Education, and Welfare, pursuant to Fed.R. App.P. 43.

Alfred Mollin, Washington, D.C., for defendants-appellants.

Thomas H. Brock, Malcolm J. Harkins, III, Casson, Calligaro & Mutryn, Washington, D.C., for plaintiffs-appellees.

Before KENNEDY, FARRIS and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

This is a medicare reimbursement case. The Secretary appeals a summary judgment reversing the Secretary's denial of reimbursement.

In 1967 five doctors formed Valley Mission, Inc., for the purpose of constructing a physical facility to house a hospital. In February 1968 the same five doctors formed Spokane Valley General Hospital, Inc., (SVGH I)[1] which entered into an agreement with Valley Mission to operate the hospital when construction was completed.

In 1968 American Medicorp, Inc., in an arm's length transaction, acquired the capital stock of SVGH I in exchange for 10,000 shares of American Medicorp stock, allegedly valued at $750,000. American Medicorp merged SVGH I into American Medicorp's own subsidiary, also called Spokane Valley General Hospital, Inc. (SVGH II).[2] Pursuant to the terms of the transaction, SVGH II subsequently executed a long-term lease with Valley Mission, which retained ownership of the physical facility.

Before that transaction SVGH I had prepared for the opening of the hospital by arranging for personnel, supplies, services, insurance, licenses, and certification. *See* *Spokane Valley General Hospital, Inc. v. Harris,* No. C–78–131, slip op. at 3 (E.D. Wash. Nov. 24, 1980) (unpublished memorandum and order). In essence American Medicorp and its subsidiary purchased a " 'turn-key' operation [that was] immediately operational." *Id.* Phrased another way, American Medicorp bought a "business" which, if it was not already a going concern, was fully prepared to begin operating the hospital and become a going concern forthwith.

American Medicorp and SVGH II, as purchasers of a properly accredited medical facility, filed an administrative claim for reimbursement of their reasonable costs un-

---

1. SVGH I is a different corporation from the "Spokane Valley General Hospital, Inc." listed in the caption as a plaintiff.

2. SVGH II is the plaintiff listed in the caption.

der 42 U.S.C. §§ 1395f(b), 1395g, & 1395x(v)(1)(A). American Medicorp and SVGH II claimed that the transfer of American Medicorp stock for the capital stock of SVGH I constituted a purchase of goodwill and thus entitled them to reimbursement.[3] The Provider Reimbursement Review Board disallowed the claim, holding that since the hospital was not yet operational, any goodwill was not purchased but was instead "internally generated." *Spokane Valley General Hospital v. Blue Cross Association,* No. 77–104, slip op. at 8 (Provider Reimbursement Review Board March 10, 1978) (unpublished hearing decision). The Board also held that "the purchase in question might well have been accounted for as a pooling of interest." *Id.* at 8–9. One member of the Board dissented on the ground that the value of the stock "should be considered as pre-paid rent and amortized over the period of the lease." *Id.* at 11 (Arnstein, Board member, dissenting). The district court reversed, holding that the full value of the American Medicorp stock was reimbursable as goodwill. *Spokane Valley General Hospital, Inc. v. Harris,* No. C–78–131, slip op. at 5–6 (E.D.Wash. Nov. 24, 1980) (unpublished memorandum and order).

■ On appeal the Secretary has abandoned his original position that any goodwill was "internally generated" or that the transaction was merely a "pooling of interest." The Secretary thus concedes that goodwill may attach to a hospital that is not yet doing business but is fully staffed and ready to open.

■ The Secretary's sole argument on appeal is that American Medicorp and SVGH II could not have purchased the goodwill appurtenant to the hospital because they leased rather than purchased the hospital. This argument is unpersuasive.

The party *operating* the hospital benefits from the goodwill whether it leases or buys the underlying physical facility. *See Blue Mountain Convalescent Center v. Department of Social & Health Services,* 21 Wash. App. 593, 599, 585 P.2d 832, 836 (1978) (goodwill can be recognized as part of a lease transaction). The Secretary argues in effect that the transferor, SVGH I, retained all the goodwill that had been created and that none of the goodwill transferred to American Medicorp and SVGH II. However, the Secretary's argument finds no support in the record.

Nor can the government find support in cases holding that goodwill "cannot be disposed of separately from the business of which it is a part." *Mossler Acceptance Co. v. Martin,* 322 F.2d 183, 185–86 (5th Cir. 1963), *cert. denied,* 376 U.S. 921, 84 S.Ct. 679, 11 L.Ed.2d 616 (1964); *see also Trask v. Susskind,* 376 F.2d 17, 20 (5th Cir.1967). Those cases are inapposite here. American Medicorp and SVGH II purchased a "business" fully capable of operating the hospital and thus necessarily acquired any goodwill appurtenant to that business at the time of the purchase.

Accordingly, we agree with the district court that the possibility of recognizing goodwill in the transaction is not foreclosed by the fact that the plaintiffs leased rather than purchased the hospital.[4] But on this record we cannot determine whether the district court correctly concluded that the transferred stock was reasonably valued at $750,000 and that its full value is reimbursable *as goodwill.* We remand for a determination (1) whether $750,000 was a reasonable price to pay for the SVGH stock, and (2) how the value of the stock should be allocated between goodwill and prepaid rent.[5] *See Pacific Coast Medical Enterpris-*

---

3. It is undisputed that during the relevant time period the applicable statutes and regulations authorized reimbursement for goodwill.

4. In *Spokane General Hospital, Inc. v. United States,* 688 F.2d 771 (Ct.Cl., 1982), the United States Court of Claims reached a similar conclusion for identical claims by the plaintiffs for their fiscal years ending 1971 and 1972; this appeal concerns plaintiffs' fiscal years ending 1973 through 1975.

5. In the third count of their amended complaint, the plaintiffs alleged, in the alternative, that "the amounts paid for the stock of the prior operating company must be considered prepaid rent." Amended Complaint for Money and Declaratory Relief at 13. The parties do

*es v. Harris,* 633 F.2d 123, 139 (9th Cir. 1980).

VACATED and REMANDED for further proceedings consistent with this opinion.

not explain whether characterization as goodwill or as prepaid rent makes any difference. The Board dissenter's opinion suggests that characterization as prepaid rent would affect the timing of reimbursement. *See Spokane Valley General Hospital v. Blue Cross Associa-* *tion,* No. 77–104, slip op. at 10–11 (Provider Reimbursement Review Board March 10, 1978) (unpublished hearing decision) (Arnstein, Board member, dissenting). We need not decide that issue here.