In re **GOLDEN DISTRIBUTORS, LTD.,** and Capital Cigar and Tobacco Company, Incorporated, et al., Debtors.

**GOLDEN DISTRIBUTORS, LTD. d/b/a Golden–Capital Distributors, Plaintiff,**

v.

**Bernard REISS and Harold Levinson Associates, Inc., Defendants.**

**Bankruptcy Nos. 90 B 21146–90 B 21149.**

United States Bankruptcy Court, S.D. New York.

Dec. 21, 1990.

Summit Rovins & Feldesman, New York City, for plaintiff.

Richard V. Rappaport, New York City, for Bernard Reiss.

Jacoby & Meyers, Brooklyn, N.Y., for Alan Feig.

Shea & Gould, New York City, for Harold Levinson Associates, Inc. (Merrye Piltz Schindler and Alyson M. Weiss, of counsel).

Tannabaum & Sibener, Commack, N.Y., for defendant Arthur DiLorenzo.

DECISION ON ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE PRELIMINARILY ENJOINED AND TEMPORARILY RESTRAINED FROM SOLICITING BUSINESS FROM PLAINTIFF'S CUSTOMERS.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 11 debtor, Golden Distributors, Ltd., has moved for a temporary restraining order and preliminary injunction to prevent the defendants, Bernard Reiss ("Reiss") Alan Feig ("Feig"), and Arthur DiLorenzo ("DiLorenzo") from soliciting customers of the debtor in connection with the business of the wholesale distribution of tobacco and candy products. The debtor also seeks to enforce restrictive covenants contained in employment contracts which Reiss, Feig and DiLorenzo executed before their employment was terminated by the debtor. The debtor's motion is addressed exclusively to the enforcement of the automatic stay imposed under 11 U.S.C. § 362(a), although the debtor has filed complaints in adversary proceedings commenced against the defendants for damages for breach of contract, misconduct with intent to harm the debtor and conversion of the debtor's property rights and good will. The debtor also seeks injunctive relief in the adversary proceedings. Accordingly, the basic issue raised by the

debtor's motion relates to the assertion that the defendants seek to acquire possession or control of property of the debtor and the debtor's estate in violation of 11 U.S.C. § 362(a)(3).

### FINDINGS OF FACT

1. On November 13, 1990, the debtor and its affiliates filed with this court petitions for reorganizational relief under Chapter 11 of the Bankruptcy Code. The debtor continues to manage its property and operate its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108. The debtor is in the business of the wholesale distribution of tobacco and candy products.

2. Defendant Reiss was employed by the debtor as an operational supervisor and also performed services involving the solicitation of customers for the distribution of the debtor's products. Reiss was previously employed by the debtor under a written agreement dated as of March, 1988, which did not contain a restrictive covenant. However, for the period commencing March, 1988 and ending on September 21, 1990, when the debtor terminated his employment, Reiss agreed in writing that for a period of three years following the termination of his employment, not to be employed by or furnish any services to any business that distributes products of the type distributed by the debtor or otherwise engage in the same type of business as the debtor.

3. The debtor's employment agreement with Reiss provided that the sum of $25,000.00 per annum would be paid to Reiss for three years in exchange for his covenant not to compete with the debtor. Reiss was to be paid $12,500.00 by June 30 and December 30 of each contract year.

4. Reiss testified that the $25,000.00 sum in the restrictive covenant was not an additional compensation over the amount paid to him by the debtor under his previous contract and that, indeed, he was paid less under his second employment agreement than under his previous contract with the debtor. Under the previous agreement, Mr. Reiss' salary was $1,300.00 per week, whereas his salary under the terminated contract was $1,000.00 per week.

5. When his employment was terminated by the debtor without reason on September 21, 1990, Reiss asked for the $12,500.00 payment thereafter due under the contract on December 30, 1990. The debtor agreed in a written document, dated September 28, 1990 to accelerate the final payment of $12,500.00 in consideration for a release from Reiss as to all claims arising against the debtor from his former employment by the debtor.

6. Reiss thereafter worked as an independent contractor in the same type of activity and sale of products as were involved when he worked for the debtor. However, Reiss performed these activities on the premises of the defendant, Harold Levinson Associates, Inc., which is a competitor of the debtor. Reiss admits that he solicited the same trade for the distribution of tobacco and candy products as he did when he was employed by the debtor, including some of the debtor's customers.

7. Reiss did not take any customer lists or trade secrets when his employment was terminated by the debtor. There are no secret lists of customers. The cigar shops, candy stores, grocery stores and chains, which buy tobacco and candy products, are well-known and are also listed in the yellow pages of the telephone book.

8. There was no evidence that the debtor had any exclusive right to sell tobacco and candy products to any specific customer or that the debtor had any exclusive property interest in any customer list, geographic sales territory, delivery routes, customer relations, or proprietary business information.

9. The debtor's causes of action against Reiss relate to the restrictive covenant executed by Reiss and to the alleged misconduct attributed to Reiss after the debtor terminated his employment. The debtor also seeks to preserve the good will which it developed with its customers in the course of its business, which allegedly is threatened by Reiss' solicitation of business in violation of the restrictive covenant

which he executed. Accordingly, the debtor's right to restrict Reiss from soliciting the debtor's customers arises out of its restrictive covenant with Reiss and not because the debtor's customers constitute property of the debtor's estate within the meaning of 11 U.S.C. § 541 and 11 U.S.C. § 362(a).

10. Defendants Feig and DiLorenzo were previously engaged as employees of a subjobber of tobacco and candy products known as S & A Products. A subjobber is an entity that operates under the aegis of a tobacco jobber and does not have the right to affix a tobacco stamp to the products bearing the subjobber's own name.

11. Some time prior to December 18, 1988, Feig and DiLorenzo became employees of Metropolitan Distribution Services, Inc. ("Metro") a New York corporation engaged in the wholesale business of selling and delivering cigarettes, tobacco, candy and other related products.

12. Pursuant to two separate written contracts dated December 18, 1988 (the "Metro Employment Contracts"), Metro agreed to employ Feig under one contract and DiLorenzo under a substantially similar other contract for a period not to exceed ten years. Metro agreed to employ each defendant as a sales representative to solicit customers for Metro's products.

13. The separate contracts between Metro and the defendants, Feig and DiLorenzo, each contained clauses whereby the defendants agreed not to disclose certain business information, including methods of distribution, customer lists, trade secrets or other business records. Additionally, each separate contract contained a restrictive covenant whereby the defendants agreed that during their employment and for three years after termination of their employment, they would not induce customers of Metro to terminate, reduce or divert their business with or from Metro. The defendants also agreed not to compete with Metro's business during the restrictive period and not to solicit sales for any other business in competition with Metro in counties or states where the defendants solicited business for Metro for a period of three years after termination of their employment by Metro.

14. Pursuant to a promissory note executed by Feig and DiLorenzo in favor of Metro, dated December 15, 1988, the defendants promised to pay to Metro the sum of $364,000.00 which was owed by their previous firm, S & A Products, before it was acquired by Metro.

15. In May of 1990, the debtor purchased the business of Metro and continued to pay Feig and DiLorenzo in accordance with the terms of the Metro Employment Contracts. Feig and DiLorenzo continued to act as sales representatives for the debtor, as they did for Metro, and were treated as employees of the debtor as the successor to Metro.

16. On December 4, 1990, the debtor terminated the services of Feig and DiLorenzo and advised them in a letter of the same date that their termination was due to the fact that the debtor learned that Feig and DiLorenzo were "diverting business to, and soliciting business for H.A. Levinson Associates, a competitor of the Company." Additionally, the debtor stated in the letter that the defendants "have acted in breach of your obligations" under the Metro Employment Contracts, which they had previously executed with Metro before Metro was acquired by the debtor.

17. Although some of the former customers of S & A Products had followed the defendants, Feig and DiLorenzo, as customers of Metro and later as customers of the debtor, there was no evidence that the debtor had any exclusivity agreements with those customers or with any other customers, whereby such customers agreed to deal exclusively with the debtor or agreed to purchase any specific quantity of tobacco and candy products sold or distributed by the debtor. Hence, the debtor has no proprietary interest in any of its customers other than those contractual rights arising out of the restrictive covenants contained in the defendants' employment contracts with Metro, which the debtor continued after it acquired Metro's business.

## DISCUSSION

The debtor's motion is specifically addressed to the enforcement of the automatic stay imposed under 11 U.S.C. § 362(a)(3), which enjoins any act "to obtain possession of the property of the estate or property from the estate or to exercise control over property of the estate." The relief sought under 11 U.S.C. § 362(a)(3) is considerably different than the injunctive relief available under 65 Fed. R.Civ.P., as adopted by Bankruptcy Rule 7065. A preliminary injunction is obtainable under 65 Fed.R.Civ.P. in connection with an adversary proceeding to obtain an injunction when it appears that immediate and irreparable injury loss or damage will result to the applicant if the injunction is not granted; that the applicant does not have an adequate remedy of law; and there is a strong likelihood that the applicant will ultimately prevail on the merits.

The settled rule is that a preliminary injunction should issue only upon a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Sonesta Int'l Hotels Corp. v. Wellington Assoc.*, 483 F.2d 247, 250 (2d Cir.1973). *See also, Columbia Pictures Indus., Inc. v. American Broadcasting Companies, Inc.*, 501 F.2d 894 (2d Cir.1974); *Kampmeier v. Nyquist*, 553 F.2d 296 (2d Cir.1977); *Division 580, Amalgamated Transit Union, AFL–CIO v. Central N.Y. Regional Transp. Auth.*, 556 F.2d 659 (2d Cir.1977).

The requirements for enforcing an automatic stay under 11 U.S.C. § 362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable injury, or loss and a likelihood of success on the merits. The key elements for a stay under 11 U.S.C. § 362(a)(3) are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate.

Manifestly, the employment contracts with the defendants might qualify as property of the debtor's estate. However, the issue raised by the debtor's motion does not involve the enforcement of contractual rights or injunctive relief to protect the debtor's contractual rights. The debtor's adversary action against the defendants seeks damages for breach of contract and injunctive relief to restrain allegedly injurious and improper conduct on the part of the defendants. The debtor could have sought a preliminary injunction under 65 Fed.R.Civ.P., as adopted by Bankruptcy Rule 7065, to preserve the debtor's contractual rights if the debtor chose to establish the elements necessary to obtain a preliminary injunction under 65 Fed.R.Civ.P. and Bankruptcy Rule 7065. However, the debtor elected to apply for the enforcement of the statutory relief made available under the automatic stay, as expressed in 11 U.S.C. § 362(a)(3).

Having opted to proceed under 11 U.S.C. § 362(a)(3) rather than applying for a preliminary injunction under 65 Fed.R.Civ.P., as adopted by Bankruptcy Rule 7065, the debtor was not required to establish that there was a likelihood of success with respect to the enforcement of the restrictive covenants in the defendants' employment contracts. Accordingly, the debtor offered no proof that it could successfully restrain former employees from soliciting customers within three years after the debtor terminated their employment for the purpose of selling the same line of products sold by the debtor. Nor did the debtor offer any convincing evidence that it would sustain irreparable injury as a result of the defendants' sales activities.

In order to invoke 11 U.S.C. § 362(a)(3), the debtor must show what property of the estate is implicated and that some entity or individual is attempting to obtain possession or exercise control over such property of the estate.

In the instant case, the fact that the defendants may have breached the restrictive covenants in their employment contracts or that they may have improperly solicited the debtor's customers, for which the defendants might ultimately be liable to the debtor for damages or enjoined from

engaging in such improper conduct, does not mean that the defendants attempted to obtain possession or control of property of the estate in violation of 11 U.S.C. § 362(a)(3).

Absent any evidence as to exclusivity agreements between the debtor and its customers or that such customers are required to purchase from the debtor specific quantities of products, the debtor can point to no property interest with respect to its potential customers which can be interfered with by the defendants, or which is capable of being lost to the possession or control of the defendants in violation of 11 U.S.C. § 362(a)(3). Although the debtor argues that the good will of its customers is an intangible property right which the defendants have misappropriated, this argument loses sight of the fact that the restriction which the debtor seeks to enforce against the defendants arises out of a contract executed by the defendants and not by virtue of any other property right which the debtor may have with respect to its potential customers.

Under certain circumstances where a debtor has contractual arrangements with its customers which can be translated into assured sales or income, such intangible property rights or good will can be protected from interference by others within the context of 11 U.S.C. § 362(a)(3). Thus, where a debtor has contractual arrangements with subscribers and members of a health plan organization which provides health care to the members, the debtor's good will and its contracts with its subscribers and members will be regarded as so essential to the survival of the debtor that they constitute property of the estate within the meaning of 11 U.S.C. § 541 so that direct billing actions against the members and contract providers should be stayed as an impermissible attempt to obtain possession or control of property of the estate in violation of 11 U.S.C. § 362(a)(3). *In re Family Health Services, Inc.*, 105 B.R. 937, 942–43 (Bankr.D.C.D. Cal.1989).

The debtor reasons that its relationship with its customers is a valuable asset and property right in the nature of good will, so that the defendants should be enjoined under 11 U.S.C. § 362(a)(3) from attempting to solicit such customers and that any such solicitation constitutes an effort by the defendants to obtain possession or custody of property of the estate.

█ Initially, it should be observed that good will is not assumed to exist in every bankruptcy case because the need for bankruptcy protection is generally inconsistent with the existence of good will over and above the value of the scheduled assets. *Jones v. Rowland*, 457 F.2d 44, 46 (10th Cir.1972). Manifestly, good will may exist in some cases as an asset of a business and may be transferred with the sale of the business and its trademarks so that a purchaser who acquires the debtor's business and trademarks from a trustee in bankruptcy may also acquire the remaining good will associated with the business "Good will is an asset of a bankrupt like any other assets, and to hold that upon the bankruptcy of the business, the good will vanishes would be to deprive the creditors of the bankrupt of what might be a substantial asset ...". *Merry Hull & Company v. Hi–Line Co.*, 243 F.Supp. 45, 50 (S.D. N.Y.1965). Thus, good will of a business, to the extent it exists, may be included as property of an estate in bankruptcy. *Ureugdenhil v. Hoekstra*, 773 F.2d 213, 214 (8th Cir.1985); *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F.Supp. 866, 874 (E.D.N.Y.1978) ("upon bankruptcy of the trademark owner, the trademark together with the good will it symbolizes became vested in the Trustee in Bankruptcy ... and may be sold by him as an asset of the estate.") There was no evidence that the defendants sought to continue the debtor's business or hold themselves out as related in any way to the debtor's business so as to acquire the good will that was associated with such business. The defendants simply solicited customers who purchased tobacco and candy products, including firms that were customers of the debtor. Any salesman from a competing firm could engage in this activity without being accused of appropriating the debtor's good will or interfering with property of the estate.

The only reason that the debtor seeks to restrain the defendants from soliciting its customers is not because the debtor's good will is an asset of the estate, which may not be interfered with by others, but because the defendants are not like other competing salesmen, in that they have agreed by contract with the debtor not to solicit the tobacco and candy trade for three years after the termination of their employment with the debtor. Moreover, where customer names and businesses to which a debtor sold products were readily obtainable in classified telephone directories and other similar sources "[t]here is no reason why the employees of a corporation should not have the same right to engage in the same business activity when the corporation declares bankruptcy." *Trask v. Susskind,* 376 F.2d 17, 20 (5th Cir.1967). The *Trask* court determined that a trustee in bankruptcy could not enjoin former officers and employees from soliciting the debtor's customers on the theory that such solicitations constituted an interference with the good will of the estate.

Generally, an injunction will not be granted to prohibit the solicitation of individual customers of an enterprise by a competing firm when those customers were not under some contractual obligation to remain with the raided enterprise and the competing firm had not appropriated a confidential written customer list. *See Glosband v. Watts Detective Agency, Inc.,* 21 B.R. 963, 972 (D.Mass.1981). The significance of a written customer list which is entitled to confidentiality lies in the fact that the employer is regarded as the owner of the written paper which is property of the estate. *Id.* at 973. In such circumstances, the courts will issue an injunction not because of a misappropriation of property from a debtor's estate, but because of unfair trade practices, unfair competition and the protection of trade secrets. *See Integrated Cash Management Services v. Digital Transactions, Inc.,* 732 F.Supp. 370, 377 (S.D.N.Y.1989). ("One important factor often considered is whether there existed an agreement between the employee and the former employer claiming misappropriation of trade secrets.") In view of the fact that there was no written customers list maintained by the debtor which might be regarded as protectable property and entitled to confidentiality, it follows that the defendants' solicitation of customers of the debtor whose names were readily obtainable from classified telephone directories and other public sources does not constitute an impermissible obtaining of possession or control by the defendants of property of the debtor's estate, or from the debtor's estate.

The court expresses no opinion as to whether or not the debtor may obtain a preliminary injunction against the defendants pursuant to Fed.R.Civ.P. 65 and Bankruptcy Rule 7065 should the debtor present evidence to satisfy the requirements of these statutory rules at a duly noticed hearing at some future date. Suffice it to say that the debtor presented no credible evidence at the hearing on this motion to show that it could succeed on the merits in barring the defendants from acting as salesmen employed in the solicitation of tobacco and candy customers for a period of three years after the debtor terminated their employment. In sum, the debtor unsuccessfully relied exclusively on 11 U.S.C. § 362(a) and did not establish that it could enjoin the defendants from earning a livelihood as tobacco and candy salesmen in competition with the debtor's business, or that their alleged breach of the restrictive covenants in their employment contracts with the debtor would cause irreparable loss to the debtor which could not be adequately compensated by an award for monetary damages.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with § 157(b)(2)(A) and (G).

2. The debtor's customers cannot be regarded as property of the debtor's estate within the meaning of 11 U.S.C. § 541 and the defendants' solicitation of business from such customers does not constitute an

act to obtain possession of property of the estate or the exercise of control over property of the estate within the context of the automatic stay as imposed under 11 U.S.C. § 362(a)(3).

3. The debtor's motion for an order to enforce 11 U.S.C. § 362(a)(3) by forbidding the defendants from soliciting the debtor's customers or competing with the debtor's business is denied.

SETTLE ORDER on notice.